**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| HERNANDEZ, KROONE AND ASSOCIATES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | **NO. 07-165C** |
| | ) | (Judge Merow) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to RCFC Appendix A, ¶¶ 4-5, the parties file the following Joint Preliminary Status Report:

**a. Does the Court have jurisdiction over the action?**

Plaintiff states that the Court has jurisdiction to consider and decide this action. Defendant is not aware of a basis upon which to challenge the Court's jurisdiction at this time.

**b. Should the case be consolidated with any other case?**

The parties agree that this case should not be consolidated with any other case.

**c. Should trial of liability and damages be bifurcated?**

Plaintiff does not believe that trial should be bifurcated as to liability and damages. Defendant submits that bifurcation may be appropriate given any significant

additional discovery that will be necessary, including an audit, to evaluate Plaintiff's cost data.

**d. Should further proceedings in this case be deferred pending consideration of another case before this Court?**

The parties agree that further proceedings in this case should not be deferred pending consideration of another case before this Court or any other tribunal.

**e. Will a remand or suspension be sought?**

The parties do not believe that remand or suspension will be sought.

**f. Will additional parties be joined?**

The parties do not currently anticipate that additional parties will be joined.

**g. Do the parties intend to file a motion pursuant to RCFC 12(b), 12(e) or 56?**

At this time, the parties cannot state whether they will file a motion pursuant to Rule 12(b), 12(e) or 56.

**h. What are the relevant factual and legal issues?**

On or prior to February 2, 2005, the Army Corps solicited bids for the United States Border Patrol Station, Indio, California located at 83801 Vin Deo Circle in Indio California ("Project"). The Project documents, including the solicitation for bids, scope of work, and plans and specifications were posted on-line as Solicitation No. W9126G-05-R-0018 ("Solicitation"). The Solicitation was a "sole Source 8(a) Solicitation" pursuant to a Partnership Agreement between the Small Business Administration and the Department of Defense, and accordingly, Plaintiff Hernandez Kroone & Associates

("HKA") was the only entity invited to respond to the Solicitation. By an e-mail dated February 2, 2005, the Army Corps of Engineers (“Army Corps”) directed HKA to a hyperlink (ftp.usace.army.mil/Incoming/SWF/INS/Indio,%20CA/) for obtaining the “whole solicitation” for the Solicitation for the Project.

HKA visited the aforementioned hyperlink and viewed, printed, and downloaded the Solicitation for the Project, including the scope of work, plans, and specifications included therein. After reviewing the information contained in the Solicitation, HKA relied on and used that information to determine the scope and requirements of the Project, and also to calculate its bid for the Project. The Solicitation allowed and invited the bid to be submitted by fax. On or about February 15, 2005, HKA submitted to the Army Corps, via fax, its fixed price bid for the Project, agreeing to furnish all services, materials, supplies, plant, labor, and equipment and superintendence to construct the Project in accordance with the Scope of Work and Specifications attached to the Army Corps Solicitation for the price of $875,468. The Army Corps accepted HKA’s bid for the Project and awarded HKA a contract to furnish all services, materials, supplies, plant, labor and equipment, and superintendence to construct the Project in accordance with the Solicitation "contract". After receiving a notice to proceed, HKA began work.

HKA contends that the Army Corps breached the contract by among other things: failing to make timely and complete progress payments; delaying and failing to pay for extra work performed by HKA; requiring changes and additional work without issuing change orders and/or making equitable adjustments and modifications to the contract for requested changes; failing to “Partner”; interfering and disrupting and delaying HKA's work; failing to obtain the cooperation of third parties’ easements, permits or other

documentation which was required to enable HKA to perform; and using authority and discretion in an unreasonable, arbitrary, and capricious manner. According to HKA, the Army Corps' nonpayment and delayed payments violated Federal prompt payment statutes. HKA also contends that prior to bid time and entering into the contract, the Army Corps failed to disclose to HKA material facts regarding the Project and made untrue representations regarding the Project, and also provided HKA inaccurate, unworkable, incorrect and insufficient plans, specifications and other materials concerning the Project, as a basis for bidding and performing the Project.

HKA's view is that the issue in this case is whether HKA is entitled to an equitable adjustment in the amount of approximately $375,000, plus interest and prompt payment penalties resulting from the Army Corps' acts and/or omissions.

The Government contends that the contract at issue was awarded following, and must be interpreted in light of, price and scope of work negotiations between the Army Corps and HKA, and between the Army Corps and General Modular Corporation ("GM"), HKA's primary subcontractor on the Project. Indeed, the Army Corps originally intended to award the contract to GM, but GM was ineligible for an SBA 8(a) sole source award. Thus, the Army Corps awarded the contract to HKA, with GM performing as a subcontractor. The Government maintains that although the Army Corps and HKA negotiations covered certain minor clarifications of the scope of work prior to the award of the contract to HKA, the scope of work did not change from the proposal submitted by GM. Indeed, the Government maintains that HKA's January 25, 2005 proposal was identical to the $875,768.00 proposal GM had submitted on January 10, 2005.

The Government's position is that it is not responsible for any of the alleged delay, and denies that HKA performed any extra-contract work for which it was not compensated. Indeed, HKA's subcontractors ultimately performed the bulk of the contract work, but have refused to submit claims to be passed through to the Government. The Government believes that none of the subcontractors found the contract specifications or requirements to be ambiguous. According to the Government, although HKA now asserts that it was not required to perform certain work because of alleged contract ambiguities, HKA's view during contract performance was that its subcontractors were obligated to perform that very same work pursuant to the subcontracts. Moreover, because the Government disputes the amounts claimed by HKA, the Prompt Payment Act does not apply.

The Government also contends that HKA's certified CDA claim, the predicate for HKA's complaint in this case, does not substantiate the damages HKA's seeks. Indeed, the Government believes that HKA's certified claim may include costs for work that plaintiff did not perform and/or costs for which HKA already has been compensated via contract modifications.

**i. What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

At this time, the parties cannot state whether the case can be settled. Upon close of discovery, the parties may request that this matter be referred for ADR.

**j. Do the parties anticipate proceeding to trial? Does any party, or do the parties jointly, request expedited trial scheduling? What is the requested place of trial?**

Assuming that the case is not resolved upon cross-motions for summary judgment, through ADR, or that the case does not settle, the parties anticipate proceeding to trial. If trial is required, plaintiff requests that the trial be held in Los Angeles, California.

**k. Are there special issues regarding case management needs?**

The parties are unaware of any special issues regarding case management needs.

**l. Is there any other information of which the Court should be aware at this time?**

The parties are unaware of other information of which the Court should be aware at this time.

**m. Pursuant to RCFC Appendix A ¶5, the parties submit the following proposed discovery plan:**

| | **Event** | **Plaintiff's proposed date** | | **Defendant's proposed date** |
|---|---|---|---|---|
| **1.** | **Initial disclosures** | October 19, 2007 | | October 19, 2007 |
| **2.** | **Close of non-expert discovery** | February 22, 2008 | | March 3, 2008 |
| **3.** | **Designation of experts** | March 14, 2008 | | April 14, 2008 |
| **4.** | **Expert report(s)** | April 30, 2008 | | June 16, 2008 |
| **5.** | **Close of expert discovery, including depositions** | June 6, 2008 | | August 18, 2008 |

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick by s/ M. Hockey
MARK A. MELNICK
Assistant Director

s/ Laurence P. Lubka
Laurence P. Lubka

HUNT ORTMANN PALFFY
NIEVES LUBKA DARLING & MAH, INC.
301 N. Lake Ave., 7th Floor
Pasadena, CA 91101
626-440-5200 Telephone
626-796-0107 Facsimile

Counsel for Plaintiff

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney
Commercial Litigation Branch
Civil Division, Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20503
202-305-3274 Telephone
202-514-8624 Facsimile

Counsel For Defendant