**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| HERNANDEZ, KROONE AND ASSOCIATES, INC.,<br>Plaintiff,<br>vs.<br>THE UNITED STATES,<br>Defendant. | CASE NO. 07-165 C<br>**********<br>The Hon. Judge James F. Merow<br>Action Filed: March 13, 2007 |

**PLAINTIFF HERNANDEZ KROONE AND ASSOCIATES, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL AND MOTION FOR ENLARGEMENT OF TIME**

The Government's combined motion to compel and motion for enlargement of time is nothing more than a continued - yet now a transparent - campaign of attacking HKA, discrediting counsel, and confusing the legal and factual issues.

## I.

## HKA'S OPPOSITION TO MOTION TO COMPEL

### A.

### THE MOTION TO COMPEL IS PREMATURE, UNWARRANTED AND BROUGHT IN BAD FAITH

By an e-mail dated March 7, 2008, HKA counsel notified Mr. Solomson that she would be out of the office the week of March 10, 2008 due to **medical related leave** and would not have access to any e-mail or regular mail, and requested the professional courtesy from Mr. Solomson that the Government "not serve any papers during this time." (Exhibit 1 to Apanian Declaration)

The Government refused HKA's counsel the requested courtesy, and in fact served HKA with its March 12, 2008 letter addressing two unrelated issues: (a) a meet and confer on HKA's discovery responses, and (b) the Government's request that HKA agree to enlarge the court established deadlines. The Government gave HKA two weeks from March 12, 2008 to respond[1].

[1] In contrast, HKA counsel has extended opposing counsel multiple courtesies. For example, HKA has stipulated and not opposed the Government's request for an enlargement to file its answer, and enlargement to file the Joint



HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

Based on the Government's own established deadline, HKA had until **March 26, 2008** to provide response to the meet and confer letter and to the Government's request to enlarge time[2]..

A day <u>before</u> the Government's established deadline for HKA to respond (and the filing of this motion), by a March 25, 2008 e-mail, counsel for HKA notified Mr. Solomson that in addition to being out of the office the week of March 10th, she had also been out of the office most of the week of March 17th and therefore "had not had the chance to respond to [Mr. Solomson's] March 12, 2008" discovery related meet and confer letter. Counsel specifically stated that she anticipated that she would have HKA's response to the March 12, 2008 letter "before April 4, 2008," (Exhibit 2 to Apanian Declaration.) The Government's motion confirms receipt of the March 25th e-mail.

The Government once again refused counsel the professional courtesy of the short extension, ignored HKA's statement about its willingness to further respond to the March 12, 2008 meet and confer letter on the discovery and filed its motion on the <u>morning</u> of March 26, 2008, even <u>before</u> the expiration of the deadline established in the Government's March 12, 2008 letter.

**B.**

**<u>THE GOVERNMENT'S DISCOVERY IS PROCEDURALLY DEFECTIVE AND OBJECTIONABLE</u>**

The Government's discovery request that is the subject of this motion to compel is procedurally defective, objectionable, confusing, unduly oppressive and burdensome, and the details are explained below. More importantly, although the motion only addresses Interrogatory Nos. 2, 4, 5, 6 and 9, the motion and HKA's opposition must be considered in the full context of the <u>entire</u> discovery request and the Government's unreasonable conduct.

**1.**

**HKA's Efforts To Meet and Confer <u>BEFORE</u> Serving Responses**

On January 25, 2007, **before responding to the Government's discovery request,**

---

Preliminary Status Report, and has patiently waited for the Government to remedy significant deficiencies in its document production.

[2] Expert Designations were due on March 31, 2008. Because of the impeding deadline, on March 18, 2008 HKA only responded to the Government's request for an enlargement of time. It did not address the meet and confer on interrogatory response. The Government's motion now mischaracterizes HKA's March 18, 2008 letter as a refusal to engage in further discussion on the discovery.

**counsel for HKA attempted to meet and confer with Mr. Solomson** to address HKA's concerns and objections. Mr. Solomson refused to engage in any meet and confer before HKA served its responses. This motion to compel could possibly have been avoided if the Government agreed to remedy the deficiencies in its discovery request.

**2.**

**Defects and Objectives to Government's Discovery**

The following are examples of some of the problems with the Government's discovery:

1. Although the discovery request seems to only contain 19 categories, but because of the inclusion of the introductory material containing "Definitions And Instructions," and because of the combination of unrelated topics in the same request, the discovery request really contains multiple subparts which make the interrogatories compound, conjunctive or disjunctive, and substantially increase the actual number of the interrogatories beyond the 25 permitted by RCFC. For example, Interrogatory No. 1 required HKA to identify **[[**all persons having knowledge of facts and circumstances surrounding HKA's Complaint;**]]** and **[[**required HKA to provide the general substance of the persons' knowledge,**]]** and **[[**whether that person would be called as a witness at trial**]]**, and **[[**the general substance of the expected testimony.**]]** The requested information is clearly compound and unrelated, therefore making this request more than one.

2. The discovery request defined "Document" to include all documents, "regardless of whether claimed to be privileged or confidential." The request also defined "Claim" to include "any other request for relief included in the Complaint" and therefore sought confidential information transmitted in an attorney-client communication which is protected by the attorney-client privilege, and also sought information given to, or obtained by, counsel in preparation for litigation which is protected by the attorney work-product privilege.

3. The discovery request prematurely and improperly sought the names of witnesses to be called at trial <u>and</u> the "general substance of his expected testimony." (See Interrogatory No. 1) Pursuant to RCFC Appendix A, Case Management Procedure, VI, Post –Discovery Proceedings, 13. Meeting of Counsel, counsel for the parties are to meet no later than 63 days before the pretrial conference and exchange a list of names, addresses and telephone numbers of witnesses who may

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

be called at trial. A pretrial conference has not yet been scheduled in this matter.

4. The discovery request prematurely and improperly sought the identification of documents to be used at trial. This was an attempt by the Government to circumvent the procedures established for disclosing trial exhibits.

5. The Government served a single discovery request, combining both interrogatory requests and requests for production of documents, unnecessarily confusing and complicating the discovery request, and causing unwarranted burden and expense on HKA[3].

## C.

## THE GOVERNMENT'S COMPLAINTS ARE UNREASONABLE AND MERITLESS

Generally speaking, the majority of the Government's complaints about HKA's responses arise as a result of interrogatory responses are phrased. Each is addressed separately below.

**Interrogatory No. 2**

The Government's motion concedes that "HKA's response appear to be responsive," and that the Government is "satisfied generally with its response to this interrogatory..." Nevertheless, the Government complains that because of HKA's objections, "HKA **may** be declining to provide additional information" and therefore the Government wants "HKA [to] **confirm** whether or not there are other HKA employees that were 'responsible for the negotiation or performance' of the contract at issue." (bold added)

First, this interrogatory is compound and contains prohibited multiple subparts. "Negotiations" of a contract are not the same as, or related to "performance" of a contract. Additionally, any information regarding the prior experience of individuals identified in the response is distinct and unrelated to the contract "negotiations" or "performance."

Second, and more importantly, HKA has responded to this interrogatory. The Government's alleged concern that "HKA may be declining to provide additional information," is not a valid or legal ground for filing a motion to compel. Also, the Government's request that

[3] The Government has done the same with this motion. It has combined its motion to compel with its motion for enlargement of time.

HUNT ORTMANN PALFFY NIEVES LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

HKA "confirm" its responses is not reasonable or justifiable. The Government cites no authority for its proposition that once responses are provided, a responding party is further obligated to "confirm" that it fully responded to the interrogatory and that no further responses are available. This request is unreasonable, without merit and cannot be a valid reason for a motion. HKA should not be required to provide further responses to Interrogatory No. 2.

**Interrogatory No. 4**

Again, the Government has no real basis for moving to compel on Interrogatory No. 4. The motion cites HKA's responses. It then argues that "[b]ecause HKA continues to assert objections to this interrogatory, it is unclear whether HKA's various responses are exhaustive." This is simply a sophomoric taunting, not a real discovery dispute.

HKA is entitled to raise appropriate objections to the interrogatories. With this motion, the Government attempts to force HKA to waive its reasonable and appropriate objections to deficiently drafted interrogatories. HKA is not required to do so. In fact, the Government cites no authority suggesting that a responding party cannot object, and at the same time, provide responses. Additionally, a motion to compel cannot be based on the Government's inability to tell whether "responses are exhaustive." The Government wants HKA to confirm that it has responded to the interrogatories. As discussed above, HKA is not required to do so.

Lastly, with this motion, the Government attempts to turn the interrogatory into a request for admission. This is not reasonable, and is an example of the Government's disregard of procedural rules. Also an example is the Government's unreasonable request here that HKA "produce all documents that HKA has used, or will use, to support that allegation [contained in paragraph 15(j) of HKA's complaint.]" This request seeks attorney work product, and prematurely asks for HKA's exhibit list. Although the Government's motion does not address documents, this example reflects the Government's unreasonable conduct and overreaching with its discovery.

**Interrogatory No. 5**

Interrogatory No. 5 is objectionable as phrases because it incorporates the introductory

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

material containing "Definitions And Instructions," including the definitions of "state in detail" and "identify," both of which include references to multiple meanings, and therefore making this request confusing and compound and containing subparts. More specifically, "state in detail" is defined to include and requires a description of "underlying facts," "circumstance, condition and thing known to you about the subject of the request…, full identification and description of the source(s) of such facts, circumstances, conditions, and things, including, … identification of each person having knowledge of and each document containing information relating to such fact, circumstance, condition or thing."

The interrogatory also requests that HKA "Identify each specific instance…" "Identify" is defined to have multiple meanings, depending on whether used in reference to "organization," "individual," "document," "source of information," or "event, meeting, discussion or telephone conversation." As drafted, the interrogatory is unclear and requires HKA to decipher which meaning of "Identify" to use for "specific instance." As a result, HKA raised appropriate objections to this interrogatory, nevertheless it made a good faith effort at providing responses. The Government now complains that "[b]ecause HKA continues to assert objections to this interrogatory, it is unclear whether HKA's various responses are exhaustive." As discussed, above, HKA is entitled to raise appropriate objections, and this motion is the Government's attempts to force HKA to waive its reasonable and appropriate objections to deficiently worded interrogatories. Again, a motion to compel cannot be based on the Government's inability to tell whether "responses are exhaustive."

The Government also complains about HKA's offer of documents in lieu of responses, arguing that it is "an abuse" to "direct…[requesting party] to a mass of business records or by offering to make all of the records available." In its responses, HKA did not refer to "mass of business records," nor did it offer to make "all of the records available." Instead, HKA specifically referred to its "request for information, request for clarifications, request for change orders, correspondence regarding same, and responses by the government to such requests, correspondence with the customer/end user, correspondence and directives regarding the contract, responding party's claims." These specifically referenced documents are not all of HKA's project

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

records, but are specific categories of documents containing the information sought.

Lastly, the Government argues that its request "is aimed at plaintiff's beliefs and intent regarding factual bases of its claim…" However, as worded, the interrogatory does not require HKA to disclose its "beliefs and intent." The Government seeks to have the interrogatory interpreted differently than phrased. This request is unreasonable, and is an attempt by the Government to force HKA to prepare its defense. Also unreasonable is the Government's request in this interrogatory/document request that HKA "produce all documents that HKA has used, or will use, to support that allegation [contained in paragraph 15(i) of HKA's complaint.]" Once again, this request is premature and seeks attorney work product.

**Interrogatory No. 6**

Interrogatory No. 6 is objectionable as phrases because it also incorporates the introductory material containing "Definitions And Instructions," including the definitions of "state in detail" and "identify," both of which include references to multiple meanings, and therefore making this request confusing and compound and containing subparts. More specifically, "state in detail" is defined to include and require a description of "underlying facts," "circumstance, condition and thing known to you about the subject of the request…, full identification and description of the source(s) of such facts, circumstances, conditions, and things, including, … identification of each person having knowledge of and each document containing information relating to such fact, circumstance, condition or thing."

The interrogatory also requests that HKA "Identify every such error or alleged defective specification…" First, the interrogatory is compound as it addresses both "error[s]" and also "alleged defective specifications." Second, "Identify" is defined to have multiple meanings, depending on whether used in reference to "organization," "individual," "document," "source of information," or "event, meeting, discussion or telephone conversation." As drafted, the interrogatory is unclear and requires HKA to decipher which meaning of "Identify" to use for "every such error." If "identify" as to "error" was defined by HKA to include "document," it would be required – among other things – to describe every single document reflecting errors on

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

the project and provide a "synopsis of content" of each document. If "identify" as to "alleged defective specifications" was defined by HKA to include "document," it would be required – among other things – to describe all of the project specifications and provide a "synopsis of [the] content" of each of the specifications. If "identify" as to "error" was defined by HKA to include "an event," HKA would be required to provide the "time, date and location" of each error, the "circumstances of" the error, the "identity of each person who participated in the meeting, discussion or telephone conversation" related to the "error," a "summary of what was discussed" as to the "error" and "whether any notes, minutes or other memoranda were made of the meeting, discussion or telephone conversation" of the "error," and to "identify the notes, minutes, or other memoranda" regarding the "error."

As a result, HKA raised appropriate objections to this interrogatory, nevertheless provide the following response and supplemental response:

"During the bidding process, the government issued a solicitation/specification which responding party relied on to bid the project. During the course of the Project, it became evident to responding party that the solicitation/specification did not reflect the complete scope of work desired and/or required by the government. Additionally, the Government provided deficient drainage design at the retention pond, civil site plans, failed to provide specifications for rock sizes and asphalt at the project, and continually changed the scope and quantities of required work on the Project."

"The plans, specifications and materials provided to HKA by the government were not accurate, workable, correct or sufficient because they did not reflect the correct scope and requirements for weed barriers, permits, modular building, asphalt quantities, aggregate base, sidewalks, anti climb fabric for the fence, water meters, traffic control, testing for subgrade and asphalt or soil testing, lockers, service conduits; requirements imposed by Imperial Irrigation District; or the desires of the end user; i.e. the Border Patrol, including but not limited to the light fixtures, cameras, concrete pads, storage boxes and conduits. Additionally, the Government failed to provide the Corps of Engineers Guide Specifications for asphalt paving."

HKA has provided an appropriate response to Interrogatory No. 6. HKA is not responsible for the drafting of the deficient, inappropriate and objectionable interrogatory, nor should it be forced to decipher the intent and/or meaning of it. Therefore, HKA should not be required to provide further responses to this interrogatory.

**Interrogatory No. 7**

Interrogatory No. 7 is objectionable as phrases because it also incorporates the

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

introductory material containing "Definitions And Instructions," including the definition of "identify," which includes references to multiple meanings, and therefore makes this request confusing and compound and containing subparts. More specifically, the interrogatory requests that HKA "Identify all costs" and "Identify duplicative costs." "Identify" is defined to have multiple meanings, depending on whether used in reference to "organization," "individual," "document," "source of information," or "event, meeting, discussion or telephone conversation." As drafted, the interrogatory is unclear and requires HKA to decipher which meaning of "Identify" to use for "costs" and "duplicative costs." Also, the interrogatory incorporates a definition of "Claim" to include "any other request for relief included in the Complaint." As defined, the request is confusing, and also seeks confidential information transmitted in an attorney-client communication which is protected by the attorney-client privilege, and also seeks information given to, or obtained by, counsel in preparation for litigation which is protected by the attorney work-product privilege. HKA objected that the interrogatory also sought facts to be relied upon at trial, rather than facts about the case, and that it was oppressive and placed an undue burden on responding party, since the information sought was equally available to both parties from an analysis of the claims themselves.

Nevertheless, HKA made a good faith effort and provided appropriate responses. HKA responded that:

"The First Amended Complaint seeks damages, including but not limited those arising from the unilateral change order regarding the January 25th proposal, lights and security cameras, for unilateral change order dated November 30, 2005, light, car wash water, electrical utility and conduit, for the addition of scope of work due to Imperial Irrigation District, contract scope of work changes, payment withholdings, extra work, including but not limited to wires and asphalt work, interest and prompt payment penalties pursuant to the contract and relevant statutes. Investigation and discovery is continuing, and to further respond to this interrogatory would require the opinion of expert witnesses."

In the cover letter accompanying HKA's supplemental responses, HKA reiterated that the Government "has copies of HKA's claims – received during the project and now through the initial disclosure process. If interested, the US can for itself compare the items sought in HKA's claims with the damages sought in HKA's First Amended Complaint. HKA is not required to perform the government's analysis or computation, or to prepare the Government's defense."

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

The Government obviously received HKA's claims submitted on December 13, December 23, December 15, December 20, 2005 and February 23 and May 3, 2006. Each claim included a detailed summary of each claim item, including the quantities, units, hourly rates, labor hours, daily rental rates, the equipment and materials used, the unit costs and the total cost for each item of claim. Government employees presumably reviewed and analyzed each of HKA's summaries before they denied the claims, and therefore the Government knows exactly what HKA claimed as part of each claim. Additionally, the Government received copies of these claims as part of the initial disclosure, and if necessary can now review and analyze the claims once again. With this motion, the Government wants to force HKA to prepare a compilation, abstract, audit, comparison or summary of all of HKA's claims. HKA currently has no such document, and the Government can prepare this summary as easily as can HKA. Therefore, HKA should not be forced to do the Government's work and prepare its defense.

Lastly, the motion cites to cases explaining the purpose of certified claims and argues that HKA must know whether some costs in each claim are duplicative of each other, or not being sought in this case. First, the purpose of certified claims are irrelevant to this motions. Second, if the Government's logic is followed, then the Government employees who reviewed and ultimately denied HKA's claims must also know whether some costs in each of HKA's claims are duplicative or not. Therefore, since the Government already has this information, HKA should not be required to incur the burden or the cost of preparing the comparison sought by the Government.

**Interrogatory No. 9**

As with Interrogatory No. 6, Interrogatory No. 9 is also objectionable as phrased because it incorporates the introductory material containing "Definitions And Instructions," including the definitions of "state in detail" and "identify," both of which include references to multiple meanings, and therefore making this request confusing and compound and containing subparts. Once again, despite HKA's objections, it provided responses to this interrogatory.

In the cover letter accompanying HKA's supplemental responses, HKA stated that it could not "respond to the issues raised regarding Interrogatory No. 9 because without further elaboration

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

and clarification, HKA does not understand what the Government's concern is." The Government's motion does not elaborate. It simply states "Due to HKA's objections to this interrogatory, it is unclear whether HKA's list of items or tasks that were allegedly 'beyond the requirements of the contract' is exhaustive."

Again, HKA is entitled to raise objections and respond at the same time. The Government cites no authority requiring HKA to withdraw its objections. HKA cannot be compelled to provide further responses just because the Government is "unclear" whether it received responses which are "exhaustive."

**II.**

## HKA'S OPPOSITION TO MOTION FOR ENLARGEMENT OF TIME

The Government's March 12, 2008 letter to HKA only sought a three month enlargement on the various deadlines, but the motion now asks for a 6 month enlargement on the close of non-expert discovery, 3 month enlargement on the designation of experts, a 7 month enlargement on expert reports and a 6 month enlargement on close of expert discovery. Below is a chart summarizing the current Court ordered deadlines, compared with the Government's March 12, 2008 request, HKA's response with proposed dates and the new dates proposed in the Government's motion:

| | 9/6/07 Court Order | Current Court Order | Approximate Dates per Government's 3/12/08 Letter | HKA Proposed Date in Response to 3/12/08 Letter | Dates in Government Motion |
|---|---|---|---|---|---|
| Initial Disclosure | 10/19/2007 | n/a | n/a | n/a | n/a |
| Close of non-expert discovery | 2/8/2008 | 05/08/08 | 08/08/08[4] | 06/05/08 | 11/30/2008 |
| Designation of experts | 3/31/2008 | 03/31/08 | 6/31/08 | 06/30/08 | 6/30/2008 |
| Expert reports | 5/26/2008 | 05/26/08 | 08/26/08[5] | 11/07/08 | 12/31/2008 |
| Close of expert discovery Including depositions | 7/14/2008 | 07/14/08 | 10/14/08[6] | 12/15/08 | 1/31/2009 |

[4] This date falls during HKA counsel's maternity leave.
[5] This date falls during HKA counsel's maternity leave.
[6] This date falls during HKA counsel's maternity leave.

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

A.

**THE REQUESTED ENLARGEMENT OF TIME IS NOT WARRANTED**

The Government argues five reasons in support of its request for a time enlargement. The problems and deficiencies of each reason/argument is addressed below:

1.

**Document Production Issues**

The Government complains that "HKA did not complete its document production… until March 6, 2008" and implies that HKA withheld and/or delayed its document production. That is not so. The Government received copies of HKA's entire project file on December 11, 2007, and could have started its review and preparation at that time. On the other hand, HKA received one CD on December 11, 2007, with no indication that additional Government documents would be forthcoming. On December 13, 2007, HKA received from the Government eight additional CDs. A review of the CDs indicated numerous problems with the Government's production. By a December 19, 2008 letter, a copy of which is attached as Exhibit 3 to Apanian Declaration, HKA attempted to meet and confer regarding the Government's production deficiencies. Specifically, HKA identified the following problems:

1. The Government's attempted electronic redactions were not effective because the redactions disappeared when viewed and/or printed;

2. Non-privileged documents appeared to have been redacted;

3. No privilege log was provided; and

4. E-mail attachments had not been produced.

HKA notified the Government that because of the ineffective redactions, and HKA's efforts to avoid improper disclosure of Government privileges, it had "ceased all efforts to access information on the CDs altogether. We have sequestered all of the CDs and the printouts of the documents so that no one can access them…" HKA also explained that the deficiencies in the Government's production were "delaying HKA's ability to access and review the produced

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

documents and to prepare this case for discovery and trial."

Thereafter, HKA engaged in continuous and tremendous efforts to have the Government remedy its production deficiencies. During the meet and confer process, HKA realized that some, but not all, of the Government's documents were Bates numbered. Counsel for the Government agreed to provide Bates stamped documents when the document production was redone to remedy the previously identified deficiencies. The Government finally remedied its production deficiencies in late January 2008 when it provided HKA with replacement CDs. Therefore, between December 19, 2007 and late January 2008, HKA did not, and could not, access any of the Government's documents and/or prepare its case.

It was not until late January – and after HKA's request regarding Bates stamping – that the Government complained about HKA's documents not being Bates numbered[7]. HKA had all of its previously produced documents Bates numbered, and provided replacement CDs on March 6, 2008[8]. The Government has had <u>all</u> of HKA's documents since December 11, 2008. In contrast, because of the Government's acts and/or omissions, it has prevented HKA from accessing the Government's documents for almost a month and a half. Therefore, the Government's argument that it now needs more time because of HKA's document production is disingenuous.

**2.**

**Discovery Dispute**

The accompanying discovery motion is a smoke screen. The motion only addresses concerns about five interrogatories, most, if not all are merit less. The Government's main concern seems to be an unfounded fear that "HKA **may** be declining to provide additional information" or that "[b]ecause HKA continues to assert objections to [these] interrogatory, it is <u>unclear</u> whether HKA's various responses are exhaustive." The Government's concerns are not legitimate grounds for a motion to compel. An in depth analysis of the Government's motion to compel and the motion for enlargement of time, along with the Government's refusal to allow HKA until April 4, 2008 to further respond, suggests that the motion to compel is really brought to

[7] RCFC 26(a)(1)(B) does not require documents to be Bates numbered.
[8] HKA Counsel had a death in her family in February, and was out of the office at times.

justify the Government's request for the time enlargement[9].

**3.**

**Initial Disclosure**

The sufficiency of HKA's initial disclosure is not the subject of this motion, or before the Court at this time. The Government has not met and conferred with HKA regarding HKA's initial disclosure, nor has it filed a motion to compel on HKA's initial disclosure. Any discussion regarding HKA's initial disclosure is beyond this motion, and simply another attempt to attack HKA and confuse the issues. As a result, HKA is forced to clarify:

The Government complains that HKA's initial disclosure identifies approximately 130 individuals likely to have discoverable information that plaintiff may use to support its claims or defenses. RCFC 26(a)(1) states in part "... a party must, without awaiting a discovery request, provide to other parties: (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information." The rule also states "A party must make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case." At the time HKA prepared its initial disclosure, it identified all of the individuals who would likely have information about the project and that HKA could use to support its claim. These people included Government officials, HKA employees, and HKA subcontractors who worked on and had knowledge of what transpired on the project. HKA did nothing wrong by identifying all of these individuals with knowledge of the project. Had HKA not provided a complete initial disclosure, the Government would be complaining that HKA failed to comply with the rules. Since HKA's initial disclosure is not the subject of this motion to compel, any issue or alleged deficiencies with the initial disclosure are irrelevant and cannot be the basis for a time enlargement.

---

[9] If the Government was truly interested in further responses from HKA, it would afford HKA the opportunity to respond to the March 12th letter until April 4, 2008. The April 4, 2008 deadline would definitely be before this motion was heard and ruled on. Instead, it appears that the Government rushed to file this motion to compel/motion for enlargement of time to avoid the March 31, 2008 expert designation deadline.

HUNT ORTMANN PALFFY NIEVES LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

4.

**Expert on Damages**

The Government complains that it "learned for the first time, in HKA's discovery responses, that HKA intends to present expert testimony on damages," and therefore the Government requires additional time to retain damages expert. First, this statement is not true. The Government has had notice of HKA's intent regarding an expert on damages as early as October 19, 2007 because HKA's initial disclosure clearly and expressly states:

"Hernandez Kroone And Associates' **calculation of damages is subject to expert investigation, evaluation and analysis** and this initial disclosure is being provided without prejudice to its right to amend, alter or change such calculations."

Second, the Court's scheduling order required designation of experts on March 31, 2008. The RCFC does not require HKA to make expert disclosures prior to the Court's March 31, 2008 deadline. Therefore the Government was not entitled to HKA's expert information prior to that time. In fact, HKA's initial disclosure and interrogatory responses gave the Government a heads-up regarding HKA's intent to use a damages expert, and the Government's request for additional time is not warranted.

5.

**Government's Counsel's Unavailability**

The Government's motion states that Counsel for the Government will be out of the office the week of April 20, 2008 and July 14-23, 2008 and agency counsel unavailable April 6-13, 2008. The motion does not explain why or how an unavailability of counsel for three weeks justifies an enlargement of time by three to seven months.

**B.**

**THE GOVERNMENT'S MOTION LACKS CREDIBILITY**

The Government's motion attacks HKA and argues "it strains credulity that either HKA's

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

or the Government's expert will require more than four months to draft a report; yet, that is precisely what HKA has proposed." It is true that HKA proposed a June 30, 2008 deadline for expert designations and a November 7, 2008 deadline for expert reports. These dates were proposed because they fall before and after HKA's counsel's maternity leave.

What is not clear however, is why the Government would propose a six month spread between expert designation and expert reports when it so vehemently criticizes HKA for proposing a four month spread. The motion seeks to have expert designation on June 30, 2008, yet expert reports due six months later, on December 31, 2008[10].

C.

## THE GOVERNMENT'S POSTURING IS UNREASONABLE

The Government's motion argues "HKA can offer no principled bases for asking this Court to extend the overall discovery schedule by five months, while insisting on only short extensions of specific deadlines contained therein."

First, HKA is not asking this Court to extend any of the deadlines. It is the Government that is seeking the enlargement. With the exception of the March 31, 2008 expert designation deadline which became moot because of the Government's motion, HKA is willing to comply with the current Court ordered deadlines.

Second, although HKA attempted to again accommodate the Government's scheduling needs, it simply would not agree to any dates within the time HKA's counsel is planned to be on maternity leave. Apparently, unavailability of counsel due to maternity leave does not fall within the Government's definition of a "principled basis."

## CONCLUSION ON MOTION TO COMPEL

Plaintiff HKA respectfully requests that Defendant's motion to compel further responses be denied in its entirety.

[10] Expert and counsel will most probably be unavailable on December 31, 2008 due to office closures for the holidays.

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

## CONCLUSION ON MOTION FOR ENLARGEMENT OF TIME

Plaintiff HKA respectfully requests that Defendant's motion for enlargement of time be denied and a new date be set for designation of experts. Alternatively, if the motion is granted HKA requests that the deadlines be scheduled so that deadlines between July 1, 2008 and October 3, 2008 (maternity leave) and during December 24, 2009 and January 2, 2009 (holidays) be avoided.

DATED: April 14, 2008

Laurence P. Lubka SBN 103752
HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 North Lake Avenue, 7th Floor
Pasadena, California 91101-1807
Phone: (626) 440-5200
Fax: (626) 796-0107

Attorney for Plaintiff Hernandez, Kroone & Associates

Of Counsel:

Joseph J. Pertrillo, DC Bar No. 184986
PERTRILLO & POWELL, P.L.L.C.
5335 Wisconsin Avenue, N.W., Suite 440
Washington, D.C. 20015
Phone: (202) 887-4848
Fax: (202) 478-1656

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| HERNANDEZ, KROONE AND ASSOCIATES, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES,<br><br>Defendant. | CASE NO. 07-165 C<br><br>**********<br><br>The Hon. Judge James F. Merow<br><br>Action Filed: March 13, 2007 |

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

**MILENE C. APANIAN DECLARATION IN SUPPORT OF HKA'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AND MOTION FOR ENLARGEMENT OF TIME**

I, Milene C. Apanian, being duly sworn, state as follows:

1. My name is Milene Chraghchian Apanian. I am over 18 years of age. I am an associate attorney with Hunt Ortmann Palffy Nieves Lubka Darling & Mah, Inc., attorneys of record for Hernandez Kroone And Associates, Inc. ("HKA") in this matter.

2. I am fully competent to make this declaration and I have personal knowledge of the facts stated in this affidavit. To my knowledge, all of the facts stated in this declaration are true and correct. If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief. I make this declaration in support of HKA's Opposition to Defendant's Motion to Compel and Motion For Enlargement of Time.

3. I am currently pregnant with my second child and anticipate being on maternity leave from July to mid October. During the last few months, I have had pregnancy related complications which have caused me to be out of the office at times.

4. The discovery request which is the subject of this motion to compel combines interrogatory requests and request for production of documents, and contains objectionable

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

interrogatory requests and production request On January 25, 2007, before HKA's responses to the Government's discovery request were due, I contacted Mr. Solomson and requested a two week time extension to respond. During that phone conversation, I notified Mr. Solomson that HKA thought that the discovery request, and the interrogatories and demand for production of documents as phrases were procedurally defective and objectionable. I attempted to meet and confer with Mr. Solomson, hoping that we could resolve and/or remedy some of the deficiencies before HKA provided responses. Mr. Solomson refused to meet and confer and requested that HKA address its concerns through objections in its discovery responses. As a result HKA provides responses to the Government's discovery, including appropriate objections. Thereafter, Mr. Solomson sent a meet and confer letter, complaining about HKA's responses and objections. HKA provided supplemental responses, along with a cover letter explaining HKA's position.

5. On or about February 25, 2008, I received a call from Mr. Solomson wanting to discuss HKA's supplemental discovery responses. We had a brief discussion, and Mr. Solomson generally discussed the Government's concerns regarding HKA's responses. We specifically discussed two interrogatories. It was apparent to me that it was not possible to address the Government's concerns over the phone because Mr. Solomson kept insisting that we could not reach an agreement. I requested that if the Government still had any outstanding issues regarding HKA's supplemental responses, that it provide those concerns in writing so HKA could evaluate those concerns and respond accordingly. Mr. Solomson agreed to discuss with his higher ups the Government's obligations to further meet and confer and to contact me if/when the Government made a decision regarding its desire to file a motion to compel. I confirmed this agreement with an e-mail of the same date and reiterated HKA's position that any outstanding concerns by the Government should be clearly identified in writing, and HKA given an opportunity to respond prior to filing any motion to compel.

6. Between the February 25, 2008 phone call and March 7, 2008 I did not hear back from Mr. Solomson regarding the discovery.

7. By an e-mail dated March 7, 2008, I notified Mr. Solomson that I would be out of

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

the office the week of March 10, 2008 due to medical related leave and would not have access to any e-mail or regular mail. I specifically requested the professional courtesy from Mr. Solomson that the Government not serve any papers during this time. Attached hereto as Exhibit 1 is a true and correct copy of my March 7, 2008 e-mail. I know Mr. Solomson received my March 7, 2008 e-mail because I did not receive any mail delivery error messages, and subsequent correspondence from Mr. Solomson confirms receipt of that e-mail.

8. I was out of the office the entire week of March 10, 2008. When I returned to the office and checked my e-mails, I realized that Mr. Solomson had refused my requested courtesy. In fact, by a March 12, 2008 e-mail, he had served HKA with a letter addressing two unrelated issues: (a) a meet and confer on HKA's discovery responses, and (b) the Government's request that HKA agree to a three month enlargement to the court established deadlines. This letter gave HKA two weeks to respond.

9. I was again mostly out of the office the week of March 17th. I was in the office on March 18th. Since expert designations were due on March 31, 2008, and since I had not had the chance to investigate or respond to the discovery issues in Mr. Solomson's request, I decided to respond to the portion of Mr. Solomson's March 12, 2008 letter addressing the request for a time enlargement, including expert designations. By a March 18th letter, I proposed alternative dates for the time enlargement and explained HKA would not agree to any deadlines that fell during the time I was on maternity leave. Three of the deadlines proposed by the Government fell within the time I was on maternity leave. My intention was to address the discovery separately and at a later date when I had an opportunity to evaluate the March 12, 2008 letter. Nothing in my March 18th letter states that HKA is refusing to respond to the Government's discovery issues. It simply states that Mr. Solomson had mischaracterized the facts.

10. Since I was mostly out of the office the week of March 17, I did not have a chance to respond to Mr. Solomson's letter regarding the discovery. A day <u>before</u> the Government's established deadline for HKA to respond by a March 25, 2008 e-mail, I notified Mr. Solomson that since I had been out of the office, I "had not had the chance to respond to [his] March 12,

2008" discovery related meet and confer letter. **I specifically stated that I anticipated that I would have HKA's response to the March 12, 2008 letter "before April 4, 2008,"** Attached hereto as Exhibit 2 is a true and correct copy of my e-mail. I know Mr. Solomson received this e-mail because I did not receive any mail delivery error messages, and the motion concedes receipt of this e-mail.

11. Since Mr. Solomson had not respond to my March 18th letter regarding the time enlargement, and the March 31, 2008 expert designation deadline was fast approaching, I e-mailed Mr. Solomson on March 25, 2008 requesting that he let me know what his intentions were regarding the upcoming expert designation deadline. Mr. Solomson responded on March 26, 2008, attaching a copy of the Government's filed motion to compel and motion for enlargement of time.

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

## GOVERNMENT'S DOCUMENT PRODUCTION

12. I received one CD on December 11, 2007, with no indication that additional Government documents would be forthcoming. On December 13, 2007, I received from the Government eight additional CDs. I review of the Government's CDs and noted numerous and significant problems with the Government's production. Most importantly, I noticed that the Government had not properly redacted its electronic documents. The redactions appeared to be simple blacked out boxes which disappeared when viewed and/or printed. Realizing the implications of reviewing privileged and confidential information from the opposition, I immediately stopped my review of these documents and information. I had all of the CDs and printouts of the documents sequestered so no one could access them. I immediately sent a meet and confer letter to Mr. Solomson, identifying in detail the problems and deficiencies in the Government's production, including the lack of privilege log and missing attachments to all of the e-mails. A true and correct copy of my December 19, 2007 letter is attached hereto as Exhibit 3.

13. Between December 19, 2007 through the end of January 2008, I had numerous telephone conversations and some e-mail correspondence with Mr. Solomson regarding the Government's production. All along, the Government knew that HKA was being delayed in its

trial preparation. During these discussions, it also became evident that some, but not all of the Government's documents had been Bates Stamped. Mr. Solomson agreed to Bates Stamp the documents when he provided CDs replacing the previously produced documents.

14. It was not until late January – and after HKA's request regarding Bates stamping by the Government – that the Mr. Solomson complained about HKA's documents not being Bates numbered. After Mr. Solomson's request, I had all of HKA's previously produced documents Bates numbered, and provided replacement CDs on March 6, 2008. The Bates stamping did not prevent the Government from accessing or using HKA's documents to prepare for trial. (In January and February, I had a very sick family member who ultimately passed away)

**EXPERT ISSUES**

15. The Government's motion complains that it "learned for the first time, in HKA's discovery responses, that HKA intends to present expert testimony on damages," and therefore the Government requires additional time to retain damages expert. However, the Government has had notice of HKA's intent regarding an expert on damages as early as October 19, 2007 because HKA's initial disclosure clearly and expressly states:

"Hernandez Kroone And Associates' **calculation of damages is subject to expert investigation, evaluation and analysis** and this initial disclosure is being provided without prejudice to its right to amend, alter or change such calculations."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed April 14, 2008, at Pasadena, California.

MILENE C. APANIAN

HUNT ORTMANN PALFFY NIEVES
LUBKA DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Phone (626) 440-5200 • Fax (626) 796-0107

**Milene C. Apanian**

**From:** Milene C. Apanian

**Sent:** Friday, March 07, 2008 6:11 PM

**To:** 'Solomson, Matthew (CIV'

**Subject:** HKA v. US

Matt:

I will be out of the office next week on medical related leave. I should be back at the office on March 17th.
I will not have access to e-mail or regular mail, so please do not serve any papers during this time.
I appreciate your understanding and professional courtesy.

*Milene C. Apanian*
Hunt Ortmann Palffy Nieves Lubka Darling & Mah, Inc.
301 North Lake Avenue
7th Floor
Pasadena, CA 91101-1807
Phone: (626) 440-5200
Fax: (626) 796-0107
E-mail: apanian@huntortmann.com
Web: www.huntortmann.com

***Confidentiality Notice:*** *The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.*

*Pursuant to applicable federal regulations, we are required to inform you that any advice contained in this communication is not intended to be used nor can it be used for purposes of: (1) avoiding tax penalties or (2) promoting, marketing or recommending to another party any transaction or matter addressed above.*

EXHIBIT "1"

**Milene C. Apanian**

---

**From:** Milene C. Apanian
**Sent:** Tuesday, March 25, 2008 4:10 PM
**To:** 'Solomson, Matthew (CIV)'
**Subject:** HKA v. US

Mr. Solomson:

I have received your March 12, 2008 letter regarding US's discovery, despite my March 7th e-mail notifying you that I would be out of the office the entire week of March 10 due to medical issues, and request for the professional courtesy of not serving any papers during that time.

I was also out of the office most of last week and therefore have not had a chance to respond to your March 12, 2008. I anticipate that I will have HKA's response to your March 12, 2008 letter before April 4, 2008.

*Milene C. Apanian*
Hunt Ortmann Palffy Nieves Lubka Darling & Mah, Inc.
301 North Lake Avenue
7th Floor
Pasadena, CA 91101-1807
Phone: (626) 440-5200
Fax: (626) 796-0107
E-mail: apanian@huntortmann.com
Web: www.huntortmann.com

***Confidentiality Notice:*** *The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.*

*Pursuant to applicable federal regulations, we are required to inform you that any advice contained in this communication is not intended to be used nor can it be used for purposes of: (1) avoiding tax penalties or (2) promoting, marketing or recommending to another party any transaction or matter addressed above.*



EXHIBIT "2"

HKA v. US

**Milene C. Apanian**

**From:** Milene C. Apanian
**Sent:** Wednesday, December 19, 2007 3:10 PM
**To:** 'Solomson, Matthew (CIV)'
**Subject:** FW: Solomson Letter.PDF

Mr. Solomson:

Please see attached letter.

Solomson Letter.PDF (275 KB)

*Milene C. Apanian*
Hunt Ortmann Palffy Nieves Lubka Darling & Mah, Inc.
301 North Lake Avenue
7th Floor
Pasadena, CA 91101-1807
Phone: (626) 440-5200
Fax: (626) 796-0107
E-mail: apanian@huntortmann.com
Web: www.huntortmann.com

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

Pursuant to applicable federal regulations, we are required to inform you that any advice contained in this communication is not intended to be used nor can it be used for purposes of: (1) avoiding tax penalties or (2) promoting, marketing or recommending to another party any transaction or matter addressed above.



EXHIBIT "3"

**MILENE C. APANIAN**
E-mail: apanian@huntortmann.com
3291.002

Hunt Ortmann
Attorneys At Law

Hunt
Ortmann
Palffy
Nieves
Lubka
Darling
& Mah,
Inc.

December 19, 2007

VIA E-MAIL AND FACSIMILE
(202) 514-8624

Matthew H. Solomson
United States Department of Justice
Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

**Re: <u>HKA v. US</u>**

Dear Mr. Solomson:

I received the one CD delivered to our office on December 11th, and the 8 CDs delivered to our office on December 13th. This letter is HKA's attempt to meet and confer on US' production.

It has come to my attention that your attempted redactions may not be effective. I began accessing the documents on the CDs by first looking at the CD marked "Joe Flynn e-mails." I opened the CD file entitled "Joe Flynn e-mails, privileged deleted." Based upon your description of the CD file, I assumed that privileged documents had been removed from the production. When I accessed the documents, I came across blacked out blocks on a number of documents. When I printed the first 10 pages, I realized that the blacked out blocks which appeared on the electronic page 4 did not appear on the hard copy. Attached is a copy of the printout of page 4.

At first glance, the information which appears to have been blacked out from the electronic copy does not seem to be privileged at all. Since we cannot determine what, if anything, you intended to redact, and on what grounds, if any, we request that a privilege log be provided and describe the information you seek to withhold from production.

While HKA waits for your privilege log and clarification, we have taken the following precautionary step: We have ceased all efforts to access information on the CDs altogether. We have sequestered all of the CDs and the printouts of the documents so that no one can access them. Also, note that we have **not** uploaded any of the CDs on our computer system or shared the information with our client, witnesses or experts. In face, I alone have accessed Joe Flynn's e-mail CD, our technical support staff accessed the first CD solely to make arrangements for printing the documents.



301 North Lake Avenue, 7th Floor • Pasadena, CA 91101-5118 • Voice: 626-440-5200 • Fax: 626-796-0107 • www.huntortmann.com

Furthermore, as a result of my brief review of the Joe Flynn CD it appears that many e-mails refer to or include attachments which have not yet been produced. Please produce all attachments referenced in all of the e-mails.

As you can imagine, having to wait for the privilege log and your clarification on the blacked out portions of the documents is delaying HKA's ability to access and review the produced documents and to prepare this case for discovery and trial. This delay could significantly jeopardizing HKA's ability to prosecute this case. Therefore, we request that the privilege log, any clarifications, and all of the additional documents be produced immediately.

If you wish to discuss any of the matters addressed herein, please feel free to call me.

Very truly yours,

Apanian

Milene C. Apanian

MCA:mca
Attachment
cc: Richard Mah
HKA

**Weintraub, Mark M SPL**

**From:** Flynn, Joseph A SPL
**Sent:** Tuesday, February 21, 2006 6:08 AM
**To:** Berg, Roger N SPL
**Subject:** FW: M2-SWF Created/Amended Labor Cross Charge Code 0274AD For L1-SPL Organization L1M0D80

**Importance:** High

FYI

-----Original Message-----
From: Cefms Labor Cross Charge [mailto:cefms@wpc26.usace.army.mil]
Sent: Friday, February 17, 2006 9:57 AM
To: Flynn, Joseph A SPL
Subject: M2-SWF Created/Amended Labor Cross Charge Code 0274AD For L1-SPL Organization L1M0D80
Importance: High

M2-SWF-FORT WORTH DISTRICT
has created/amended labor cross charge code 0274AD for organization code L1M0D80 at L1-SPL-LOS ANGELES DISTRICT.
This charge code is available for use by employees assigned to this organization, and may be viewed in the Labor Cross Charge Reference Screen 17.17 (Option 11 under the CEFMS Labor Authorization Menu.)

```
CHRG CD REQ ORG PERF ORG WORK ITEM
------- ------- -------- ---------
0274AD  M2H0300 L1M0D80  H0L2C1
Item Desc: LABOR FOR RESIDENT OFFICE-INDIO BPS
P2 Proj No: 124339 - 124339-M2 Indio Border Patrol Station (For Performing Site Alternate)
```

**Weintraub, Mark M SPL**

**From:** Weintraub, Mark M SPL
**Sent:** Thursday, February 16, 2006 2:13 PM
**To:** Moore, Daniel W SPL; Minch, Lawrence N SPL
**Cc:** Bonilla, Patricia B SPL; Berg, Roger N SPL; Cover Spear, Barbara K SPL; Flynn, Joseph A SPL
**Subject:** RE: HKA Reqests for COD

We have not changed our approach.

Pat and I are actively working on the CoDs.

Pat and I talked to Anne Hernandez yesterday and requested some additional documentation from her. (original $938,000 proposal and her notes of pre-con meeting)

She does not intend to press the dates.

Mark