No. 07-165C
(Judge Merow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HERNANDEZ, KROONE AND
ASSOCIATES, INC.,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

# DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF RESPONSES TO DEFENDANT'S INTERROGATORIES AND ITS MOTION FOR ENLARGEMENT OF TIME

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division, Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274

May 7, 2008

Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. HKA's Pattern of Responding To Interrogatories Notwithstanding Its Objections Is Evasive And Improper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. The Government's Interrogatories Are Clear And Unambiguous As Evidenced By HKA's Partial Answers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. The Government's Interrogatories Are Proper And HKA's Responses Are Deficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV. The United States Has Satisfied Its Obligation To Meet And Confer With HKA In Good Faith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

V. The Court Should Grant Our Motion For An Enlargement Of Time . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

### CASES

AAB Joint Venture v. United States,
75 Fed. Cl. 448 (2007) . . . . . . . . . . 10, 11, 12

Adolph Coors Co. v. American Ins. Co.,
164 F.R.D. 507 (D. Colo. 1993) . . . . . . . . . . 4, 15

Advante Intern. Corp. v. Mintel Learning Technology,
2006 WL 3371576 (N.D. Cal. Nov. 21, 2006) . . . . . . . . . . 11

Athridge v. Aetna Casualty and Surety Co.,
184 F.R.D. 181 (D.D.C. 1998) . . . . . . . . . . 13

Beverly v. Depuy Orthopaedics, Inc.,
2008 WL 45357 (N.D. Ind. Jan. 2, 2008) . . . . . . . . . . 14, 15

Capacchione v. Charlotte-Mecklenburg Schools,
182 F.R.D. 486 (W.D.N.C. 1998) . . . . . . . . . . 5, 7, 9, 10

Directory Dividends, Inc. v. SBC Communications, Inc.,
2003 WL 23208804 (E.D. Pa. Dec. 31, 2003) . . . . . . . . . . 12

G.D, et al. v. Monarch Plastic Surgery, P.A.,
2007 WL 201150 (D. Kan. Jan. 22, 2007) . . . . . . . . . . 13

Hobley v. Burge,
2003 WL 22359520 (N.D. Ill. Oct. 15, 2003) . . . . . . . . . . 7

Jackson v. Coach, Inc.,
2008 WL 782635 (D.Kan. Mar. 20, 2008) . . . . . . . . . . 9

Long v. Landvest Corp.,
2006 WL 897612 (D. Kan. Mar. 31, 2006) . . . . . . . . . . 3, 5, 9, 13

National Union Fire Ins. Co. of Pittsburgh, PA v. FDIC,
1995 WL 146278 (D. Kan. Mar. 7, 1995) . . . . . . . . . . 2

Oliver v. City of Orlando,
2007 WL 3232227 (M.D. Fla. Oct. 31, 2007) . . . . . . . . . . 12

Pulsecard, Inc. v. Discover Card Services, Inc.,
168 F.R.D. 295 (D. Kan. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 9, 10

Sonnino v. University of Kansas Hosp. Authority,
221 F.R.D. 661 (D. Kan. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Swackhammer v. Sprint Corp. PCS,
225 F.R.D. 658 (D. Kan. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.,
247 F.R.D. 198 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

United States ex rel. Tyson v. Amerigroup Illinois, Inc.,
230 F.R.D. 538 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VNA Plus, Inc. v. Apria Healthcare Group, Inc.,
1999 WL 386949 (D. Kan. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 11

Vica Coal Co., Inc. v. Crosby,
212 F.R.D. 498 (S.D. W. Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Wisconsin Elec. Power Co. V. United States,
2006 WL 5618161 (Fed. Cl. April 6, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HERNANDEZ, KROONE AND ASSOCIATES, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | NO. 07-165C |
| | ) | (Judge Merow) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF RESPONSES TO DEFENDANT'S INTERROGATORIES AND ITS MOTION FOR ENLARGEMENT OF TIME**

On March 26, 2008, defendant, the United States, filed a motion seeking a court order to compel plaintiff, Hernandez, Kroone and Associates, Inc. ("HKA"), to provide proper and complete responses to certain interrogatories served upon plaintiff on December 12, 2007. In addition, we also moved for an enlargement of time for the items in the Court's scheduling order. HKA filed its response to our motions on April 14, 2008. As explained in detail below, HKA has not demonstrated that it should be excused from answering our discovery requests. Moreover, because the parties require additional time within which to complete discovery in this case, our motion for an enlargement of time should be granted.

**ARGUMENT**

The Government's interrogatories are aimed at obtaining simply the type of facts that ordinarily are included in a proper complaint, but which HKA failed to include in its complaint in this case. HKA is refusing to disclose basic facts that it must know in order to have complied with RCFC 11 when it filed its complaint. Below, we first address HKA's objections that are common to more than one interrogatory. We then address specific objections that HKA has interposed with respect to particular interrogatories. We note at the outset, however, that HKA's

response does not cite to, or otherwise rely upon, even a single case (or other authority) for any of its asserted propositions of law, nor does HKA take issue with, or attempt to distinguish, any of the cases we discussed in our opening motion.

## I. HKA's Pattern of Responding To Interrogatories Notwithstanding Its Objections Is Evasive And Improper

HKA questions whether there is any "authority for [the Government's] proposition that once responses are provided, a responding party [may be] further obligated to 'confirm' that it fully responded to the interrogatory and that no further responses are available." HKA's Response to Motion to Compel (hereinafter "HKA Resp.") at 5. There is, indeed, a legion of such authority.

For example, in National Union Fire Ins. Co. of Pittsburgh, PA v. FDIC, 1995 WL 146278 (D. Kan. Mar. 7, 1995), "[d]efendants answered most of the interrogatories in part, but subject to objections." Id. at *3. In rejecting such an approach, the district court explained:

> Reserving objections in such a manner creates ambiguity and uncertainty as to whether defendants have withheld responsive information, notwithstanding their answers. The Court knows of no rule or principle which supports this hybrid procedure in answering interrogatories, once answers have been ordered.

Id. Accordingly, the court ordered the nonresponsive parties to "supplement their answers without objection." Id.

Indeed, courts have required a party to confirm whether its responses were exhaustive. For example, in Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd., 247 F.R.D. 198 (D.D.C. 2008), the court held that the plaintiff's interrogatory response was "ambiguous and incomplete" in that it "fail[ed] to indicate whether Centinela in fact ha[d] all the rights" in a certain trademark. 247 F.R.D. at 201 (emphasis added). Accordingly, the court ordered plaintiff "to

provide an unambiguous statement identifying all those having any rights to Centinela's Mark" and further instructed that "[i]f Centinela owns all rights to the Mark, it should clearly state that fact." Id. (emphasis added). Similarly, in that case, the court also required plaintiff "to confirm that it has no non-privileged documents . . . and that all responsive documents withheld on the basis of confidentiality or privilege have been identified in [the] privilege log." Id. at 202 (emphasis added); see also VNA Plus, Inc. v. Apria Healthcare Group, Inc., 1999 WL 386949, *3 (D. Kan. 1999) ("Defendants shall . . . supplement their answers . . . under oath and clarify that the answers are not subject to objections about the temporal scope of the interrogatories." (emphasis added)).

As in VNA, and as we explained in our opening motion, see Def. Mot. at 6-12, HKA's interrogatory responses are ambiguous, and either appear to be – or, in some cases, certainly are – neither exhaustive nor complete. HKA's continued reliance on its objections and its failure to confirm that its answers are exhaustive – including HKA's use of the phrase "including, but not limited [to]" (see, e.g., HKA's January 25, 2008 Response to Interrogatory 7) – are improper and should be rejected. See 1999 WL 386949, *7 (noting that "[t]he term 'includes' usually connotes a non-exhaustive list" and ordering parties to "clarify their answer to remove any ambiguity" and to "clarify whether they have listed all [responsive] information").[1]

---

[1] We note that HKA could have rendered moot our motion to compel by confirming that it is not withholding any information based on its objections; HKA's refusal to do so suggests that it, indeed, is withholding otherwise responsive information. See Long v. Landvest Corp., 2006 WL 897612, *3 (D. Kan. Mar. 31, 2006) (finding "Motion to Compel moot as to . . . general objections" where respondents "state they have not withheld any information premised on [such] general objections").

## II. The Government's Interrogatories Are Clear And Unambiguous As Evidenced By HKA's Partial Answers

HKA argues that Interrogatory Nos. 5, 6, 7, and 9 are "objectionable as phrases [sic] because [they] incorporate[] . . . definitions of 'state in detail' and 'identify.'" HKA Resp. at 5-9. Neither of those phrases, however, were defined in any atypical manner. Moreover, although we clarified the scope of information we were seeking in our interrogatories – via our several "meet and confer" letters to HKA in response to its objections – HKA nevertheless persists in asserting that it does not understand the meaning of the terms "state in detail" and "identify." Indeed, we submit that the very point of the "meet-and-confer" obligation is to avoid the type of unnecessary dispute HKA has caused here in continuing to assert objections notwithstanding that our letters clarified any possible ambiguity in our interrogatories. See Adolph Coors Co. v. American Ins. Co., 164 F.R.D. 507, 517 (D. Colo. 1993) ("This [meet-and-confer] rule . . . usually serves a salutary purpose. Discovery disputes are frequently the result of inadvertent ambiguity in the discovery request or misapprehension concerning what is required by the request. . . . In most cases, these and other problems can be resolved, without court intervention, by frank discussion among the lawyers.").

Thus, courts consistently have rejected the position adopted by HKA and, instead, have endorsed the Government's common sense approach. For example, in Pulsecard, Inc. v. Discover Card Services, Inc., 168 F.R.D. 295 (D. Kan. 1996), a party objected to certain undefined terms employed in various interrogatories as being "vague or ambiguous." 168 F.R.D. at 310. The court rejected the objections, adjuring the discovery "[r]espondent [to] exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories." Id. Moreover, the court explained that, "[t]o clarify their answers, respondents

may include any necessary, reasonable definition of such terms or phrases" but that the objecting party has to "fully answer" the interrogatories at issue. Id.; see also Forrest City Grocery, 2007 WL 841676, *2 (noting that parties "should use common sense when they are deciphering discovery requests").

In Landvest Corp., the district court likewise held that a party may clarify, in subsequent correspondence, the meaning of terms contained within its interrogatories, in response to a responding party's objections. See 2006 WL 897612, *6; see also Capacchione v. Charlotte-Mecklenburg Schools, 182 F.R.D. 486, 491 (W.D.N.C. 1998) (instructing defendant to consult plaintiff "for further clarification if [defendant] is confused about what [plaintiff] is asking").

Not only did we explain precisely the deficiencies of HKA's discovery responses (see Def. Mot. at Exhibit 6 ("Remaining Interrogatory Issues" chart)), the fact that HKA provided partial responses to our interrogatories demonstrates that HKA does understand them. Thus, HKA cannot rely upon our definitions of certain terms to avoid providing a full and complete response. See Vica Coal Co., Inc. v. Crosby, 212 F.R.D. 498 (S.D. W. Va. 2003) ("It is clear from Defendant's answer to Plaintiff's Interrogatory that Defendant and Defendant's counsel knew what Plaintiff was requesting when they answered it."); VNA Plus, 1999 WL 386949, *6 ("Defendants assert that they have provided the best information presently available. Such an answer hedges. It suggests defendants have provided less than a fully responsive answer.").

## III. The Government's Interrogatories Are Proper And HKA's Responses Are Deficient

**Interrogatory No. 2**. HKA objects that "this interrogatory is compound and contains prohibited multiple subparts." HKA Resp. at 4. As we explained to HKA in our earlier correspondence, however, HKA already has conceded that "a subpart of an interrogatory" is

permissible so long as it does not "introduce[] a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it." HKA Feb. 22, 2008 Letter at 1 (quoting Willingham v. Ashcroft, 226 F.R.D. 57, 59 (D.D.C. 2005)).

First, our interrogatories conform to the very rule upon which HKA relied in its objection. Second, HKA's parsimonious view of RCFC 33 and our discovery request is misguided. "[I]f all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted or requests for increases in the numerical limit might become automatic." Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 664 (D. Kan. 2004). Indeed, in that case, the district court quoted the Advisory Committee note to Fed. R. Civ. Proc. 33 to explain that "'a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.'" Id. Moreover, even "an interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question." Id.

First, with respect to this interrogatory, the "common theme" is the identification of plaintiff's primary employee-witnesses in this case. Second, even if HKA is correct that this interrogatory should properly be counted as distinct questions, HKA is not prejudiced because: (a) this interrogatory seeks precisely the information HKA was required to – but did not – provide as part of its initial disclosures pursuant to RCFC 26; and (b) HKA does not explain how the Government thereby exceeded its total number of allowed interrogatories. Third, the fact that HKA answered this interrogatory constitutes a waiver of its objection. 182 F.R.D. at 492.

The parties' dispute regarding this interrogatory was completely avoidable; all HKA had to do was confirm that there were no other individuals HKA was withholding from disclosure, in response to this interrogatory, based upon HKA's objections thereto. HKA's continued refusal to do so is inexplicable.

**Interrogatory No. 4**. HKA does not dispute our specific explication, in our motion to compel, of any of the deficiencies with respect to HKA's response to this interrogatory. See Def. Mot. at 7-8 (arguing that HKA's responses are misleading or not exhaustive). HKA's only objection to this interrogatory, not otherwise addressed above, concerns an associated request for production of documents "that HKA has used, or will use, to support" the allegation contained in paragraph 14(j) of HKA's complaint in this case. We have not moved to compel production of the requested documents, rendering HKA's objection inapposite. In any event, we note that the reason we did not so move is because HKA indicated that "it has already produced for requesting party all of its Project documents." See Def. Mot. at Exhibit 1 (HKA's January 25, 2008 Response to Interrogatory 4).

However, to the extent HKA is withholding responsive, privileged documents, as its response to our motion to compel suggests (see HKA Resp. at 5), HKA must provide the Government with a privilege log. Hobley v. Burge, 2003 WL 22359520, *2 (N.D. Ill. Oct. 15, 2003) (citing Fed. R. Civ. P. 26(b)(5), and explaining that "[t]o the extent the City objects to

producing documents on the basis of the attorney-client privilege . . . , the City has the obligation to produce a privilege log, which it has not done.”). HKA has not done so here.[2]

**Interrogatory No. 5**. With respect to this interrogatory, we have demonstrated that “HKA thus far has provided no factual details to support the allegation contained in paragraph 14(i) of its complaint.” Def. Mot. at 8. Thus, contrary to HKA’s contention, the parties dispute concerns far more than whether the Government is able to discern “whether ‘responses are exhaustive.’” HKA Resp. at 6.

HKA’s justification for its otherwise parsimonious response is that it referred to “specifically referenced documents.” Id. Not only is that justification patently insufficient, HKA misrepresents the nature of its objection contained in its January 25, 2008 response to this interrogatory. There, HKA argued that “[t]o further respond to this interrogatory would necessitate the preparation or the making of a compilation, abstract, audit or summary of or from the Project records, **including** [the list of categories of documents]” to which HKA now avers that it directed the Government. Def. Mot. at Exhibit 1 (emphasis added). HKA, in that regard, argued that “the burden or expense of preparing or making such a compilation . . . would be substantially the same for the party propounding the interrogatory as for responding party.” Id.

First, as explained above, the word “including” means that HKA did not intend the Government to examine only certain categories of documents. Indeed, HKA did not confine

---

[2] HKA’s privilege claim arguably has been waived. Sonnino v. University of Kansas Hosp. Authority, 221 F.R.D. 661, 668 (D. Kan. 2004) (rejecting defendants’ argument that “privilege log . . . preserved their assertion of the attorney-client privilege and work product immunity” where “[t]hat privilege log was not provided . . . until [defendants] served their response to the Motion to Compel, which was more than four months after they served their initial responses” and holding that “[d]efendants cannot rely on this privilege log at this late date to resurrect their attorney-client privilege and work product immunity claims”).

itself to any specific documents, but rather referred the Government to the entire project file: "Responding party has already produced all of its Project records for requesting party and requesting party can therefore perform its own analysis." Id. (emphasis added).

Second, HKA now apparently has abandoned its argument that "the burden or expense of preparing or making . . . a compilation . . . would be substantially the same" for both parties. Id. HKA does not make that argument in its response to our motion to compel. "When a party fails, even inadvertently, to address its boilerplate or conclusory objections in response to a motion to compel, the party 'fails to meet its burden to support its objections.'" Jackson v. Coach, Inc., 2008 WL 782635, *10 (D.Kan. Mar. 20, 2008) (quoting Sonnino v. University of Kansas Hosp. Authority, 221 F.R.D. 661, 671 (D. Kan. 2004)).

Third, a mere unsupported allegation of undue burden or expense is insufficient; rather, HKA would have had "to support [its] objection" by "providing an affidavit or other evidentiary proof of the expense or time involved in responding to the discovery request." Landvest Corp., 2006 WL 897612, *5 ("Respondents have made only a conclusory allegation of burdensomeness, and have provided no detailed explanation, affidavit, or other evidence which demonstrates that providing this information would be burdensome, time-consuming, or expensive."). Moreover, "[r]equiring a responding party to perform extensive research or to compile substantial amounts of data and information does not automatically constitute an undue burden." 182 F.R.D. at 491. Rather, "[t]o comply with [RCFC 33(d)], the respondent must thus specifically designate what business records answer each interrogatory" and demonstrate that "the burden of deriving the answer from them must be substantially the same for the party seeking the information as for the respondent." 168 F.R.D. at 305.

We note that, quite aside from HKA's failure to demonstrate undue burden, HKA also improperly referred the Government to HKA's entire Project file. HKA's reference to categories of documents "included" in that file is insufficient. See 168 F.R.D. at 305 (noting that "qualify[ing] the list of specified documents with the phrase, 'included among these documents' . . . makes the list non-specific" and "does not qualify as an election to produce business records"). HKA has thus engaged in precisely the type of conduct criticized by the district court in Capacchione:

> Given the large mass of documents produced, [the responding party] cannot seriously contend it adequately identified the request information when it vaguely referred to a category of files. . . . By providing only vague references to categories of files, [that party] appears to be sending [the requesting party] on a fruitless and diversionary fishing expedition with no clear direction.

182 F.R.D. at 491; see also AAB Joint Venture v. United States, 75 Fed. Cl. 448, 451-52 (2007).

Finally, the Government should not have to make even educated guesses regarding the specific facts upon which HKA has based certain allegations in its complaint. That is, even if HKA had referred to specific records by Bates-number, for example, the Government should not be required to divine upon which facts, contained in such documents, HKA has based its complaint. Accordingly, for the above reasons, and as explained in the Government's motion to compel, HKA's response to this interrogatory is improper and deficient.

**Interrogatory No. 6**. HKA's objections to this interrogatory are adequately addressed above. As we explained to HKA in our March 12, 2008 "Remaining Interrogatory Issues" chart, "[t]he Government is entitled to know each and every contract specification – identified by number – that HKA alleges is defective." See Def. Mot. at Exhibit 6.

The interrogatory asked HKA to "identify every . . . alleged defective specification." HKA not only has failed to do so, but also has failed to explain why it should not be required to provide such information. Instead, HKA simply lists certain categories of work and asserts that its response is "appropriate." There is nothing for HKA "to decipher" (see HKA Resp. at 8), however, and, even if the request was not perfectly clear, we have since explained to HKA in our various meet-and-confer letters exactly what HKA was required to provide. Indeed, HKA's position here ignores that "one purpose of the 'meet and confer' process is to allow the parties to reach a more refined understanding of what is being requested in light of what may actually exist." Advante Intern. Corp. v. Mintel Learning Technology, 2006 WL 3371576, *2 (N.D. Cal. Nov. 21, 2006) ("A party propounding discovery requests is often faced with the dilemma that if it uses broad language or insists upon a broad interpretation of its requests, the requests will be objectionable as overbroad or unduly burdensome . . . .").

Finally, because HKA qualified its response with the phrase "including but not limited to[,]" HKA's response is deficient in any event. See 1999 WL 386949, *7 (noting that "[t]he term 'includes' usually connotes a non-exhaustive list" and ordering parties to "clarify their answer to remove any ambiguity" and to "clarify whether they have listed all [responsive] information").

**Interrogatory No. 7**. HKA's first objection to this interrogatory (not otherwise addressed above) is that it seeks "confidential information . . . protected by the attorney-client privilege." HKA cites no authority for that contention and, indeed, it is false.

First, this Court has explained, at length, "[t]he requirements for asserting the attorney-client privilege." AAB Joint Venture, 75 Fed. Cl. at 456. As did the discovery respondent in

AAB, HKA here "merely states that to answer the interrogator[y] would require disclosure of information protected by the attorney-client privilege." Id. "Such a conclusory statement does not satisfy [plaintiff's] burden. Instead, for each of the interrogatories for which [plaintiff] seeks to invoke the privilege, [it] must set forth objective facts to establish that the [privilege] requirements . . . are met." Id. HKA thus has failed to properly invoke the protections of the attorney-client privilege and has thereby waived it.

Second, "the protection [of the attorney-client privilege] extends only to the communications themselves and not to underlying factual information." Id. In this interrogatory, the Government has not sought to learn the contents of privileged communications, but rather only factual information that cannot be insulated from discovery merely because it is contained within a putative communication with counsel. Accordingly, "[c]ontention interrogatories that seek damage theory and methodology information from a plaintiff almost invariably will comport with the requirements or Rules 26(b)(1) and 33(c) of the Federal Rules of Civil Procedure, seeking as they do, information about an inherent element of the claim." United States ex rel. Tyson v. Amerigroup Illinois, Inc., 230 F.R.D. 538, 544 (2005); see also Wisconsin Elec. Power Co. V. United States, 2006 WL 5618161, *1 (Fed. Cl. April 6, 2006) (Merow, J.) ("There is no viable privilege involved in providing testimony as to . . . the damage claim(s) plaintiff is asserting in this matter"); Directory Dividends, Inc. v. SBC Communications, Inc., 2003 WL 23208804, *3 (E.D. Pa. Dec. 31, 2003) ("Interrogatories 8 and 9 seek the application of law to fact in an effort to uncover the factual basis of Plaintiff's damages claim. As such, they are expressly permitted by Rule 33(c)."); Oliver v. City of Orlando, 2007 WL 3232227, *3 (M.D. Fla. Oct. 31, 2007) ("It is not Defendant's task to calculate Plaintiff's damages for her, nor must

Defendant be left to guess as to the element's of Plaintiff's claimed damages. Plaintiff is obligated to comply with Rule 26, and compute it as it stands now, bearing in a mind that a party is under a duty to supplement its response as appropriate.").

Finally, as we argued in our opening motion, see Def. Mot. at 11-12, HKA must know the answer to this interrogatory given the nature of the CDA claim process. HKA submitted a number of CDA claims to the contracting officer, and HKA therefore cannot – and does not – deny that it knows whether it is pursuing, in this action, all of the damages and costs sought in its CDA claims, or whether HKA has abandoned some portion of those CDA claims, and/or whether HKA's CDA claims are duplicative of each other in some respect. The Government, in contrast, cannot discern the answer to this interrogatory in light of the paucity of facts in HKA's complaint. In any event, as explained above, HKA cannot avoid this interrogatory based upon the naked assertion that "the Government can prepare [a] summary as easily as can HKA." See Landvest Corp., 2006 WL 897612, *5; Athridge v. Aetna Casualty and Surety Co., 184 F.R.D. 181, 191 (D.D.C. 1998) (holding conclusory "burdensomeness objections" are "insufficient"); G.D, et al. v. Monarch Plastic Surgery, P.A., 2007 WL 201150, *4 (D. Kan. Jan. 22, 2007) (overruling plaintiffs' objections and explaining that "[t]he court cannot speculate on the nature of the burden to plaintiffs in complying with this request, and as a result, the court cannot balance the burden of production to plaintiffs against the benefits of production to defendants").

**Interrogatory No. 9**. We note that HKA apparently has abandoned its objection that "[t]o further respond to this interrogatory would necessitate [HKA's] preparation or the making of a compilation, abstract, audit or summary." But, that is precisely why we questioned "whether HKA's list of items or tasks . . . is exhaustive" – that objection implies that there, indeed, is a

"further" response to the interrogatory that HKA refused to provide. Def. Mot. at 12. Finally, HKA does not contest that it identified only categories of work, but did not "detail the factual bases" for HKA's allegation that such work was "beyond the requirements of the contract." Id. HKA's remaining objections to this interrogatory simply repeat those we have refuted above.[3]

## IV. The United States Has Satisfied Its Obligation To Meet And Confer With HKA In Good Faith

We served our first set of interrogatories and requests for production of documents upon plaintiff on December 12, 2007, now more than four months ago. HKA did not respond to our interrogatories until January 25, 2008. We then engaged HKA in an extensive meet-and-confer process in an attempt to resolve the parties' differences. In that regard, we wrote to HKA on February 14, 2008, and engaged in further discussions with opposing counsel via phone on or about February 25, 2008. Although counsel for HKA indicated that HKA would be unlikely to provide the Government with any additional interrogatory responses, counsel for HKA once again asked us to "clearly and in writing identify those remaining concerns, and to allow HKA an opportunity to respond." See Def. Mot. at Exhibit 4 (threatening that, if we were to file a "motion against HKA without further efforts to resolve the outstanding issues which the government thinks may still exist, it will do so in violation of the statutory requirements to engage in good faith efforts to resolve disputes prior to filing motions").

[3] HKA also advances several general objections. See HKA Resp. at 3-4. Those general objections, however, either relate to an interrogatory not at issue here (i.e., Interrogatory No. 1), or to HKA's obligation to supplement its discovery responses. See also Beverly v. Depuy Orthopaedics, Inc., 2008 WL 45357, *3 (N.D. Ind. Jan. 2, 2008) ("Again, Beverly does not articulate how, why, or even if any of his general objections apply in his response to Depuy's motion to compel, and as a result, this Court finds any such arguments have been waived.").

Accordingly, on March 12, 2008, in a final attempt to avoid involving the Court in this discovery dispute, we complied with HKA's request to "clearly and in writing identify . . . remaining concerns, and to allow HKA an opportunity to respond." Id. On March 18, 2008, HKA sent the Government a letter in which counsel for HKA indicated that she would "only address []our request for an enlargement of time."

HKA then asked for yet additional time (until April 4, 2008) to respond to our March 12, 2008 letter, a request which we properly refused when we filed our motion to compel. As the district court explained in Adolph Coors, the meet-and-confer "rule is not a device which permits a party to interpose blanket boilerplate objections to perfectly proper questions and then obdurately discuss the matter to death in a vain attempt to avoid going to court." 164 F.R.D. at 517. Yet, that is precisely what HKA has done here and, in so doing, "has turned the [meet-and-confer] rule on its head." Id. at 517-18 (noting that party is obligated "to give . . . [discovery] requests a reasonable construction").

In seeking this Court's involvement, we thus have "acted properly in refusing to acquiesce in [HKA's] burden-shifting tactics[s]."[4/] Id. Indeed, to the extent our requested enlargement of time will further delay the resolution of this case, such delay is due to HKA's delays in

---

[4] HKA argues that we "refused to engage in any meet and confer before HKA served its responses" and that our "motion to compel could possibly have been avoided if the Government agreed to remedy the deficiencies in its discovery request." HKA Resp. at 2 (emphasis added). HKA cites no rule or case in support of its assertion that we should have adjusted or revised our discovery requests prior to receiving HKA's written responses thereto. Indeed, such burden-shifting tactics are precisely the problem here. The party serving discovery requests is not obliged to rewrite them merely because the party served asserts that the requests are unclear. But, that was exactly the purpose for which HKA requested a meet-and-confer. The proper course, however – as we stated, and as dictated by the Rules of this Court – is to respond to the discovery requests, and to assert any objections in detail and in writing with respect to a specific request.

responding to the type of efficient, tiered discovery we have sought to conduct. In that regard, we cannot plan our deposition strategy, nor even select potential deponents, until HKA first completes its answers to our interrogatories. The Government's expert also requires such answers to move forward with his analysis. In sum, our seeking the Court's involvement following no less than three meet-and-confer efforts – and after more than three months from the service of our interrogatories – is more than reasonable, and is the most likely means of achieving a speedy and efficient resolution of this unduly protracted controversy.

## V. The Court Should Grant Our Motion For An Enlargement Of Time

We note, first, that HKA does not argue that it would somehow be prejudiced by the Government's requested enlargement. Second, the simple fact is that HKA has consented to an enlargement of time such that discovery would close finally (i.e., including expert discovery) on December 15, 2008, a five month total extension to the current schedule in this case. Thus, the parties' disagreement surrounds only the dates for: (a) the close of non-expert discovery; (b) the designation of experts; and (c) the exchange of expert reports.[5/]

At this point, having spent more than four months of discovery trying to secure answers to our interrogatories, we cannot complete discovery by June 6, 2008, the date HKA has proposed and that is now less than a month away. Although HKA is correct that we originally asked whether it would oppose only a three month enlargement of time, we ultimately moved for a longer period based upon HKA counsel's representation that no date between July and October

---

[5] The latter two dates are a secondary concern, and will be driven, in any event, by the selection of dates for the close of non-expert and expert discovery.

2008 is acceptable due to her maternity leave.[6] Moreover, we asked HKA for its consent to a three month enlargement approximately <u>two</u> months ago. Thus, much of the time extension we originally sought has been consumed by the motion to compel, and HKA's refusal to consent to a reasonable enlargement. Indeed, rather than consenting to the three months we initially sought, HKA proposed a single month extension for the close of non-expert discovery, while proposing a nearly five month extension for the close of all discovery, including expert depositions.

In any event, at this point, we sincerely doubt whether the parties could complete discovery even by sometime in August 2008, due not only to the parties' protracted discovery dispute, but also to other case-related obligations and absences during the summer months. Furthermore, we should not have to make deposition decisions in the dark, absent complete responses to our interrogatories. The instant discovery dispute has consumed more than four months of the initial discovery schedule, and we require not only that time but also answers to our interrogatories in order to identify likely deponents, and to schedule, prepare for, and take those depositions.

HKA's deficient RCFC 26 disclosures also obfuscated the identification of deposition witnesses. HKA's only response on this point is that "[s]ince HKA's initial disclosure is not the subject of this motion to compel, any issues or alleged deficiencies . . . are irrelevant and cannot be the basis for a time enlargement." HKA Resp. at 14-15. That is an unduly formalistic

---

[6] In that regard, we note that Ms. Apanian is <u>not</u> counsel of record for HKA in this case, but rather is an associate of Mr. Laurence P. Lubka, who <u>is</u> counsel of record. If Ms. Apanian is the only attorney from Mr. Lubka's firm available to handle HKA's case, we take issue neither with that fact, nor with his associate's planned leave of absence. In sum, we have no objection to HKA's request that "deadlines be scheduled so that deadlines between July 1, 2008 and October 3, 2008 . . . and during December 24, 2009 and January 2, 2009 . . . be avoided." HKA Resp. at 17. Expert discovery currently is set to close during that problematic timeframe (on July 15, 2008).

approach, at best, and a non-sequitur at worst. The fact is that HKA does not deny that it failed to comply with RCFC 26(a)(1)'s requirement that HKA disclose not only the individuals "likely to have discoverable information" but also the "the subjects of the information." RCFC 26(a)(1). HKA has not yet identified "the subjects of the information" possessed by those individuals.

HKA's initial disclosure obligation is a continuing one and flows from the Rules of this Court. In any event, whether we need to move this Court to compel HKA to obtain such information is besides the point; the delays caused to us by HKA's failure to adhere to RCFC 26 are a legitimate basis for a request for an enlargement of time, contrary to HKA's argument.[7]

With regard to the parties' respective document productions, we concur that there have been problems on both sides. However, we are still dealing with HKA's document production flaws. For example, in response to our request that HKA review its production of a correspondence file to remove extraneous and irrelevant documents, HKA, on April 28, 2008, purported to withdraw from production approximately 60 such documents from just the first 200 of approximately 550 documents contained within that correspondence file. We are awaiting HKA's decision with respect to the remaining approximately 350 documents within that file. Although we have attempted to review the correspondence file, the extraneous pages have rendered the correspondence file virtually impossible to understand. HKA provided no explanation for why such pages were included to begin with.[8]

---

[7] We note that Interrogatory No. 2, discussed above, is aimed at obtaining the type of information HKA is required to provide under RCFC 26.

[8] The non-responsive documents are not merely interspersed between whole sets of correspondence, but actually interrupt particular email chains and letters within the file, and include restaurant menus, resumes, job descriptions, and apparently random text from deeds.

Finally, the Government should not be prejudiced by being forced to complete discovery at an accelerated pace simply because no attorney is available to represent HKA between July and October 2008. All we ask is that HKA be required to extend to us the same courtesy, and recognize that our need for more time is driven not only by the discovery needs of this case, but also by genuine workload and circumstances facing Government counsel.

**CONCLUSION**

For the reasons stated above, the Government respectfully requests that the Court compel HKA to respond to the interrogatories at issue, and that the Court issue a scheduling order setting deadlines as we requested in our opening motion.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Matthew H. Solomson
MATTHEW H. SOLOMSON
Trial Attorney, Commercial Litigation Branch
Civil Division, Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3274

May 7, 2008

Counsel for Defendant