# In the United States Court of Federal Claims

No. 07-165 C

(Filed June 16, 2008)

************************************

HERNANDEZ, KROONE AND ASSOCIATES, INC., *
Plaintiff, *

v. *

THE UNITED STATES, *
Defendant. *

************************************

## ORDER

This Contract Disputes Act ("CDA") case alleges breach of a contract between plaintiff, Hernandez, Kroone and Associates, Inc. ("HKA") and the United States Army Corps of Engineers (the "Corps") for the construction of a Border Patrol Station in Indio, California (the "Project").

The parties' Joint Preliminary Status Report ("JPSR") filed on August 31, 2007, recited that on or about February 2, 2005, the Corps solicited bids for the Project. The solicitation, scope of work, plans and specifications were posted on-line as a "sole Source 8(a) Solicitation" pursuant to a Partnership Agreement between the Small Business Administration ("SBA") and the Department of Defense ("DOD"). Plaintiff was the only entity invited to respond. By an e-mail dated February 2, 2005, the Corps directed plaintiff to a hyperlink to obtain the "whole solicitation." After reviewing that link and in reliance thereon, plaintiff calculated and submitted its bid on or about February 15, 2005, offering to furnish all services, materials, supplies, plant, labor, equipment and superintendence for $875,468. Plaintiff's bid was accepted and work commenced.

Plaintiff contends that the Corps:

> breached the contract by among other things: failing to make timely and complete progress payments; delaying and failing to pay for extra work performed by HKA; requiring changes and additional work without issuing change orders and/or making equitable adjustments and modifications to the contract for requested changes; failing to "Partner"; interfering and disrupting and delaying HKA's work; failing to obtain the cooperation of third parties' easements, permits or other documentation which was required to enable HKA to perform; and using authority and discretion in an unreasonable, arbitrary, and capricious manner. . . . HKA also contends that prior to bid time and entering into the contract, the Army Corps failed to disclose to HKA material facts regarding the Project and made untrue representations regarding the Project, and also provided HKA inaccurate, unworkable, incorrect and insufficient plans, specifications and other materials concerning the Project, as a basis for bidding and performing the Project.

(JPSR 3-4.)

An equitable adjustment of approximately $375,000, plus interest and prompt payment penalties, is sought.

Defendant responds that the contract must be interpreted in light of price and scope of work negotiations between the Corps and plaintiff and between the Corps and General Modular Corporation ("GM"), plaintiff's primary subcontractor. The Corps originally intended to award the contract to GM, but GM was ineligible for an SBA 8(a) sole source award; thus, the contract was awarded to plaintiff, with GM performing as a subcontractor. Except for minor clarifications, the scope of work did not change from the proposal presented to GM. Defendant asserts it is not responsible for any alleged delay, and denies that plaintiff performed any extra work for which it was not compensated, adding that plaintiff's subcontractors performed the bulk of the contract work and refused to submit claims for additional work to be passed through to defendant. During performance of the contract, it is asserted that neither the subcontractors nor plaintiff found the specifications or requirements to be

ambiguous. Defendant also states that plaintiff's certified CDA claim included "costs for work that plaintiff did not perform and/or for which HKA already has been compensated via contract modifications" and therefore did not substantiate the damages plaintiff seeks. (JPSR 5.)

Before the court is Defendant's Motion to Compel Production of Responses to Defendant's Interrogatories and Defendant's Motion for Enlargement of Time filed March 26, 2008. Plaintiff's Opposition was filed April 14, 2008 and Defendant's Reply on May 7, 2008.

**Discussion**

A party may serve written interrogatories upon any other party. RCFC 33(a). The responding party "must provide true, explicit, responsive, complete, and candid answers to interrogatories." *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996). Each answer must be made "separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable." RCFC 33(b)(1). Interrogatories "should be answered directly and without evasion in accordance with information that the answering party possesses after due inquiry." 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2177, at 315 (2d ed. 1994). An evasive or incomplete answer is treated as a failure to answer. RCFC 37(a)(3). Objections "shall be stated with specificity," RCFC 33(b)(4), and the propounding party may "move for an order under RCFC 37(a) with respect to any objection to or other failure to answer an interrogatory." RCFC 33(b)(5). "The party moving to compel discovery bears the burden of proving that the opposing party's answers are incomplete." *Anaheim Gardens v. United States*, 2008 WL 2043240, at *3 (Feb. 29, 2008) (citing *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007)).

Defendant served interrogatories and requests for production of documents on plaintiff on December 12, 2007. Defendant consented to plaintiff's request for a two-week extension of time to respond, resulting in a due date of January 25, 2008. Plaintiff's Responses were served on January 25, 2008, although defendant represents it first received them via facsimile on January 31, 2008. (Mot. to Compel 3, n.2.)

Subsequently, on February 14, 2008, defendant's counsel, Mr. Solomson, wrote to Ms. Apanian,[1/] counsel for plaintiff who signed the Response, with concerns over responses to Interrogatory Nos. 2, 4, 5, 6, 7, 9 and 12. Ms. Apanian's February 22, 2008, return letter included Supplemental Responses and noted she was "available to further meet and confer by phone at a mutually convenient time" if there were any further concerns.[2/] Confirming a later telephone conversation, Ms. Apanian e-mailed Mr. Solomson on February 25, 2008, asking that any additional perceived deficiencies be brought to her attention with an opportunity to respond and adding that any motion to compel filed without attempts at informal resolution would be inconsistent with good faith requirements.

In a "final attempt" to resolve what defendant described as plaintiff's failure to provide adequate responses, in a March 12, 2008, letter to Ms. Apanian, Mr. Solomson disagreed with her position that there were more than the twenty-five interrogatories permitted by RCFC 33(a). (Mot. to Compel 75.) In a four-page chart, Mr. Solomson summarized the positions of the parties concerning unresolved interrogatory issues. (*Id*. at 77-80.) Raising another matter, he suggested the deadlines in the court's September 6, 2007, scheduling order be extended by three months, citing delays in plaintiff's production of documents (not completed until March 6, 2008) and defendant's need to retain a damages expert. Ms. Apanian was asked to advise within two weeks whether she would be providing further supplementation of interrogatory responses and what her position was on extending deadlines. (*Id*. at 76.)

In a March 18, 2008 letter, Ms. Apanian agreed to a three-month extension of scheduled deadlines, but because she would be on maternity leave starting in early July through mid-October, asked that new deadlines not fall within that period. (*Id* at 82.) The letter did not mention interrogatory responses. On March 25, 2008 (prior

---

[1/] Plaintiff's counsel of record is Laurence Lupka. Ms. Apanian is an associate in Mr. Lupka's law firm. RCFC 83.1(c)(1) provides that there "shall be but **one** attorney of record for a party in any case at any one time, and such attorney of record shall be an individual (and not a firm) who has been admitted to practice before this court. Any other attorneys assisting the attorney of record shall be designated as 'of counsel.'" (emphasis added).

[2/] These communications, and HKA's Responses and Supplemental Responses are Exhibits to Defendant's Motion to Compel.

to the expiration of the two week response time of Mr. Solomson's March 12th letter – two weeks from that date being March 26th), she e-mailed him, reminding him that she had previously notified him that she was going to be out of the office the entire week of March 10th (and Mr. Solomson's March 12th letter was during that week) for medical reasons and asked for professional courtesy in this regard. She wrote that she had not reviewed or responded to the interrogatory issues because she was out of the office most of the following week, but anticipated being able to respond before April 4, 2008. Her e-mail was sent from Pasadena, California at 7:10 p.m. PT on March 25, 2008. Mr. Solomson filed defendant's Motion to Compel on March 26, 2008 at 5:32 p.m. ET.

**Number of Interrogatories**

Before addressing discrete disagreements, in response to the Motion to Compel, plaintiff complained that introductory definitions and instructions, and the breadth of the subparts of some of the interrogatories, increased the nineteen numbered interrogatories beyond the maximum twenty-five permitted by RCFC 33(a) which provides: "[w]ithout leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts . . . ."

Plaintiff's Response to the Interrogatories claimed there were an excessive number of inquiries, thereby preserving this objection.[3/]

> Lastly, objection is made to the entire set of Interrogatory [sic] because as phrased, and specially with the inclusion of the introductory material containing 'Definitions And Instructions,' the requests contain multiple

---

[3/] "All grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown." RCFC 33(b)(4). *See AAB Joint Venture v. United States*, 75 Fed. Cl. 448, 457 (2007); *Allahverdi v. Regents of the Univ. of N.M.*, 228 F.R.D. 696, 698 (D.N.M. 2005); *Herdlein Tech., Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 104-05 (W.D.N.C.1993) (holding that objection to excessive number of interrogatories must be raised before responding or objection is waived).

> subparts which make the interrogatories compound, conjunctive or disjunctive, and substantially increase the actual number of the interrogatories beyond the permitted 25.

(Pl.'s Resp. to Def.'s Interrogs. 2.)

The test for whether a question is a "discrete subpart" of an interrogatory and thus separately counted in the twenty-five limit is, Does the inquiry concern a different communication or discrete subject? As the Judicial Conference Advisory Committee on Rules of Practice and Procedure stated, subparts cannot be used to subvert the twenty-five interrogatory limitation. "However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." Fed. R. Civ. P. 33(a)(1) advisory committee's note (1993 amends.). As explained in *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685-86 (D.Nev. 1997):

> Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding they are joined by a conjunctive word and may be related.

Subparts are not separately counted if "'they are logically or factually subsumed within and necessarily related to the primary question.'" *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (quoting *Ginn v. Gemini, Inc.*, 137 F.R.D. 320, 322 (D.Nev. 1991)); *Oliver v. City of Orlando*, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007). For example, an interrogatory about a meeting may include subsidiary questions about the time and duration of that meeting, the attendees, and the substance of discussions. These questions collectively would count as only one interrogatory.

However, "once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated." *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005).

Plaintiff also argues that the "Definitions and Instructions" to the Interrogatories expanded them into subparts that must be counted. Plaintiff's Responses state that "Document" was defined to include all documents, "regardless of whether claimed to be privileged or confidential." (Pl.'s Resp. to Def.'s Interrogs. 2.) The entire definition section was not however provided with either the Motion to Compel, the Opposition or the Reply. To the extent specific arguments are made as to a particular Interrogatory, plaintiff's claims in this regard will be further examined.

Defendant's Interrogatory No. 2 provides:

> Identify each person who participated in or was in any way involved with or responsible for the negotiation or performance of Plaintiff's contract. When Identifying each person, describe[:]
>
> a. the nature of his or her participation;
>
> b. the number of years of construction experience that person had prior to beginning work on the Contract; and,
>
> c. other U.S. Government construction contracts in which that person participated prior to starting work on the Contract[.]

(Pl.'s Resp. to Def.'s Interrogs. 4.)

In responding, plaintiff asserted the request was objectionable because of its multiple subjects – persons with knowledge regarding "negotiation" of the contract may not be the same as those informed about "performance" of that contract. Plaintiff

is correct. These are two categories of inquiry and count as two interrogatories. This raises the count to twenty, still within the allowable maximum.

**Obligation to confirm accuracy**

Notwithstanding these objections, however, plaintiff identified five individuals, and generally described their private and government construction experience and knowledge in this regard.[4] Plaintiff also listed all subcontractors and their personnel, as well as personnel from the City of Indio, the Imperial Irrigation District, the Corps and the Border Patrol, noting that as part of the initial disclosure in the case, a comprehensive list of names of potential witnesses was provided.

---

[4] By letter of February 14, 2008, Mr. Solomson raised deficiencies in plaintiff's interrogatory responses and requested Ms. Apanian contact him regarding these matters by February 22, 2008. On February 22, 2008, by e-mail and facsimile, Ms. Apanian further explained prior objections and supplemented plaintiff's responses:

> Richard Hernandez: Owner of HKA and project manager. Has knowledge of contract negotiations, ongoing discussions regarding interpretations of and performance of the contract, HKA's and subcontractor's work on the project.
>
> Anne Hernandez: [] Owner of HKA, assistant project manager and contract administration. Has knowledge of contract negotiations, ongoing discussions regarding interpretation of and performance of the contract, HKA's and subcontractor's work on the project.
>
> Roland Hill: Construction Resident. Has knowledge of HKA's and subcontractor's work on the project.
>
> Nancy Cooper: Project Engineer. Has knowledge of HKA's performance of the work, including but not limited to design work.
>
> Joseph Figueroa: Project Surveyor. Has knowledge of HKA's performance of the work, including but not limited to site surveys.

(Def.'s Mot. to Compel 62-63.)

Although generally satisfied, defendant is concerned that plaintiff "may be declining to provide additional information" and asked for confirmation that the response was complete, which plaintiff has refused to do, contending that there is no obligation to "confirm" responses are complete or accurate. Resolution of this dispute is inherent in the duty to supplement discovery responses.

RCFC 26(e)(2) provides:

> A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Semantics aside, whether or not a party has an obligation to confirm that its responses are correct or complete, a party has an absolute, continuing duty to supplement its responses with any material changes, without prompting. 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.131[3], at 26-302.1 (3d ed. 2007); *see Pasant v. Jackson Nat'l Life Ins. Co*., 137 F.R.D. 255, 256-58 (N.D. Ill.1991). Information is material if the failure to disclose may prejudice the other party. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc*., 402 F.3d 1198, 1205 (Fed. Cir. 2005).

RCFC 26(e)(2) has only two exceptions to the duty to supplement. If the information has otherwise been made known to the propounding party during the discovery process, the answering party need not amend its prior response. Secondly, if the information has otherwise been made known to the other party in writing, supplementation is unnecessary. *Zoltek Corp. v. United States*, 71 Fed. Cl. 160, 163-64 (2006); *Tritek Techs., Inc. v. United States*, 63 Fed. Cl. 740, 746-47 (2005). Plaintiff must proceed accordingly.

**Other specific objections**

Interrogatory No. 4 requests plaintiff: (1) "detail the factual bases for the allegation in paragraph 14(j) of HKA's Complaint in this case that the Government excluded HKA from portions of the project and prevented HKA from performing the contract work at those times and places"; and (2) "[i]dentify all specific instances where HKA alleges such exclusion to have occurred." (Pl.'s Resp. to Def.'s Interrogs. 7.)

Plaintiff's initial response to Interrogatory No. 4 on January 25, 2008 was:

> This interrogatory is objected to insofar as it incorporates the introductory material containing "Definitions And Instructions," defining the terms "Identity" or "identify" to include references to multiple meanings, and therefore makes this request confusing and compound and containing subparts. Additionally, the purported incorporation of the definition in the question is so phrased that to miss one part of that definition would result in an incomplete or incorrect answer to the interrogatory.
>
> Subject to the conditions and objections as set forth above, and without waiving said objections, and in an effort to fairly respond to this interrogatory, responding party responds as follows: throughout the Project, the Government failed to obtain the necessary cooperation of other agencies, including the cooperation of the Imperial Irrigation District which had control over allowing right of entry to the Project.

(*Id*. at 7-8.)

Following communication between counsel over the adequacy of this response as lacking specific instances where the government excluded plaintiff from the project, or otherwise prevented it from performing the contract, plaintiff's February 22, 2008 Supplemental Response to Interrogatory No. 4 asserted:

> throughout the Project, the Government failed to obtain the necessary cooperation of other agencies, **including the City of Indio,** including

> the cooperation of the Imperial Irrigation District which had control over allowing right of entry to the Project. **The Government also failed to obtain necessary permits allowing [plaintiff] to perform Imperial Irrigation District required work within the street right of way.**

(Pl.'s Supl. Resp. to Interrogs. 4 (supplemental information in bold).)

The use of the word "including" is troubling to defendant, suggestive of other than an exhaustive list – that is, plaintiff's response that the government failed to obtain the cooperation of other agencies, **including** the City of Indio and the Imperial Irrigation District, leaves open the possibility that there were other agencies with whom the government failed to get cooperation. The court agrees with defendant's point that "including" is a restrictive word.[5/] Plaintiff must provide a complete response.

Moreover, plaintiff's vague reference to the government's failure to obtain the cooperation of the Imperial Irrigation District or the City of Indio, is not sufficient. While plaintiff correctly points out that it is not required to cull a massive administrative contract file to find documents it will use to support its contentions in this regard (an exercise that may also invade the attorney work-product privilege), defendant is entitled to the underlying contended facts, not just a conclusory statement of failure to cooperate. Specific instances are required.

Defendant also points out that in plaintiff's responses to Interrogatory No. 4, instances of failure to **cooperate** were cited, but no instances of **exclusion** from the project or **prevention** of performance were identified. The Interrogatory requested plaintiff to identify "'all specific instances where HKA alleges such **exclusion** to have occurred.'" Accordingly, defendant requests plaintiff "confirm that there are no instances where 'the Government excluded HKA from portions of the project' or 'prevented HKA from performing the contract.' If there are such instances, HKA should enumerate all specific instances of such exclusion." (Def.'s Mot. to Compel 7-8 (emphasis supplied).)

---

[5/] "Include" is defined as "to contain as a part of something. The participle *including* typically indicates a partial list[.]" *Black's Law Dictionary* 766 (7th ed. 1999).

The duty to promptly supplement responds to defendant's observation that plaintiff did not identify any instances of **exclusion** from the job site or **prevention**. Absent prompt supplementation, plaintiff's silence and failure to respond with any supportive details or facts, is noted. Whether or not the effect of silence transforms the interrogatory into a request for admission is academic. The matter may be brought to the court's attention at future proceedings should plaintiff attempt to proffer evidence of exclusion(s). In this circumstance, defendant's request that plaintiff be ordered to confirm that there are no instances in which the government excluded plaintiff from portions of the project or prevented plaintiff from performing the contract, is **DENIED**.

Interrogatory No. 5 asks for "(1)'the factual bases for the allegation in paragraph 14(i) of HKA's Complaint . . . that the Government interfered with or otherwise disrupted or delayed HKA's performance of the contract'; and (2) 'each specific instance where HKA alleges such interference occurred.'" (Def.'s Mot. to Compel 11.)

Plaintiff responded that:

> throughout the Project, the Government failed to timely respond to request for information, request for clarifications and request for change orders[.] Furthermore, the Government failed to timely identify the requirements of its customer/end user, and also frequently misdirected work and misinterpreted the contract requirements. To further respond to this interrogatory would necessitate the preparation or the making of a compilation, abstract, audit or summary of or from the Project records, including the request for information, request for clarifications, request for change orders, correspondence regarding same, and responses by the government to such requests, correspondence with the customer/end user, correspondence and directives regarding the contract, responding party's claims; and the burden or expense of preparing or making such a compilation, abstract, audit or summary would be substantially the same for the party propounding the interrogatory as for responding party. Responding party has already produced all of its Project records

> for requesting party and requesting party can therefore perform its own analysis.

(Pl.'s Resp. to Def.'s Interrogs 9.)

In her February 22, 2008 letter, Ms. Apanian defended the Response as sufficient. Records from which answers to this interrogatory could be obtained were specified, and "[i]n order for HKA to further respond to this interrogatory and to provide the exact date of every single interference, disruption or delay, [plaintiff] would have to engage in a burdensome and expensive research of project records generated during approximately 18 months . . . . " (Def.'s Mot. to Compel 57.)

Defendant seeks to compel further detail and confirmation that plaintiff's response is complete. Absent any details, defendant asserts, plaintiff has not proffered facts to support the allegation of paragraph 14(i) of its Amended Complaint that alleges "[i]nterfering with or otherwise disrupting and delaying the performance of HKA of the contract[.]" (Am. Compl. 4.) Responding to Ms. Apanian's citation of *Daiflon, Inc. v. Allied Chemical Corp.*, 534 F.2d 221, 225 (10th Cir. 1976) in her February 22, 2008 letter, defendant points out that in that case, "the responding party **specifically** identified documents which would provide the [requested] information." In contrast, it is "an abuse" to "direct[] the interrogating party to a mass of business records or by offering to make all of the records available . . . ." *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 686-87 (D. Kan. 1991). (Def.'s Mot. to Compel 9 (emphasis in original).)

RCFC 33(d) addresses plaintiff's obligation:

> Where the answer to an interrogatory may be derived or ascertained from the business records including electronically stored information, of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and **the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served**, it is a sufficient

> answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. **A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained**.

(emphases added).

Advisory committee notes are in accord.

> [P]arties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records or by offering to make all of their records available, justifying the response by the option provided by this subdivision. Such practices are an abuse of the option. . . . The final sentence is added to make it clear that a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived.

Fed. R. Civ. P. 33 advisory committee's note (1980 amends.).[6/] Since that amendment, generally, the responding party has been required to specifically direct the propounding party to the documents which contain the answer to the interrogatory. *AAB Joint Venture v. United States*, 75 Fed. Cl. 448, 451-52 (2007) (collecting cases). "A simple offer to produce unspecified documents or a general reference to a pile of documents will not suffice." *Id*. (citations omitted). However, in responding, plaintiff has "the option of specifying the business records from which the answers may be derived if the burden in ascertaining the answers from the business records is 'substantially the same' for both parties." *Renda Marine, Inc. v.*

[6/] RCFC 33(d) is identical to Fed. R. Civ. P. 33(d). The note refers to the amendment to Fed. R. Civ. P. 33(c); however, Fed. R. Civ. P. 33(c) became Fed. R. Civ. P. 33(d) by further amendment in 1993.

*United States*, 58 Fed. Cl. 57, 63 (2003) (citing RCFC 33(d)). Plaintiff has not met its obligation of that specificity here. It is assumed that plaintiff intends to submit evidence to establish specific government interference and delay and will have to assemble this material for introduction at trial. Discovery response of such material is appropriate.

Interrogatory No. 6 requires plaintiff to "[s]tate in detail the factual bases for the allegation contained in paragraph 14(o) of HKA's Complaint in this case that contract plans, specifications or other materials provided to HKA by the government were not accurate, workable, correct, or sufficient, and [i]dentify every such error or alleged defective specification." (Pl.'s Resp. to Def.'s Interrogs. 10.)

Initially, plaintiff asserts this Interrogatory is compound, because it asks for both alleged errors and defective specifications which plaintiff contends are two different categories of inquiry. (Pl.'s Opp'n Mot. to Compel 7.) Errors in specifications are defects. This is not a multiple interrogatory.

Similarly, plaintiff objects that the definitions of "identify" and "error" may require it to identify all documents with defects or errors, provide a synopsis of those documents and identify the time, date and location of events of each error or defective specifications, a list of the persons at the event, a summary of the event and a description of any notes or memos of such event. The court concludes this is all one line of inquiry and not separate inquiries such as to count as more than one in calculating the twenty-five interrogatory limit.

Notwithstanding these objections, however, plaintiff's initial response dated January 25, 2007, asserted "[d]uring the course of the Project, it became evident to responding party that the solicitation/specification did not reflect the complete scope of work desired and/or required by the government. Additionally, the [g]overnment provided deficient drainage design at the retention pond, civil site plans, failed to provide specifications for rock sizes and asphalt at the [P]roject, and continually changed the scope and quantities or required work on the Project." (Pl.'s Resp. to Def.'s Interrogs. 10-11.)

In response to defendant's complaint of lack of detail, plaintiff's Supplemental Response to Interrogatory No. 6 added:

> The plans, specifications and materials provided to HKA by the government were not accurate, workable, correct or sufficient because they did not reflect the correct scope and requirements for weed barriers, permits, modular building, asphalt quantities, aggregate base, sidewalks, anti climb fabric for the fence, water meters, traffic control, testing for subgrade and asphalt or soil testing, lockers, service conduits; requirements imposed by Imperial Irrigation District; or the desires of the end user; i.e., the Border Patrol, including but not limited to the light fixtures, cameras, concrete pads, storage boxes and conduits. Additionally, the Government failed to provide the Corps of Engineers Guide Specifications for asphalt paving.

(Pl.'s Supl. Resp. to Interrogs. 5.)

On March 12, 2008, Mr. Solomson wrote that plaintiff's identification of several categories of contract work was not sufficient; no specifications were identified. He insisted defendant was entitled to know that information.

Plaintiff identified categories of defective specifications and/or designs – retention pond drainage, site plans, rock sizes and asphalt and, in its supplemental response, added several other construction categories. Defendant is entitled to know the identification of materials alleged to be defective in this regard. Further response is required.

Interrogatory No. 7.

> Identify all costs HKA included in its various Claims (e.g. the Claims submitted on or about December 13, 2005, December 23, 2005, December 15, 2005, December 20, 2005, February 23, 2006, and May 3, 2006) submitted to the contracting officer, but for which costs the Plaintiff does not seek compensation under its First Amended

> Complaint. Do any costs included in any Claim duplicate costs included in any other Claim? If so, Identify the duplicated costs. Produce all Documents containing any summary or calculation that support the quantum of HKA's Claimed damages.

(Pl.'s Resp. to Def.'s Interrogs. 11-12.)

Concerning Interrogatory No. 7, in his February 14, 2008 letter, Mr. Solomson wrote that he was entitled to know whether plaintiff had abandoned any of its prior claims and whether any costs included in claims previously submitted to the contracting officer were not being pursued in this litigation. Defendant is not satisfied with plaintiff's retort that expert analysis is required to respond to this inquiry.

Plaintiff responded, in turn, that defendant can compare for itself any differences between its claims submitted through the performance of the project and plaintiff's First Amended Complaint. Plaintiff contends that it should not have to prepare a comparison chart for defendant.

> If interested, the US can for itself compare the items sought in HKA's claims with the damages sought in HKA's First Amended Complaint. HKA is not required to perform the government's analysis or computation, or to prepare the Government's defense.
>
> Additionally, further details of HKA's damages is [sic] subject to expert witness testimony. Whether or not HKA hired consultants to prepare its claims is irrelevant to HKA's presentation of its damages at trial in this matter, and therefore there is no inconsistency in HKA's position.

(Def.'s Mot. to Compel 57-58.)

Plaintiff also asserted the interrogatory requests information protected by the attorney-client privilege.

Defendant is entitled to know whether plaintiff is pursuing all of the claims previously submitted to the contracting officer. Stated differently, defendant is entitled to know claims plaintiff is pursuing in this litigation. *See Oliver v. City of Orlando*, 2007 WL 3232227, *3 (M.D. Fla. Oct. 31, 2007) ("It is not Defendant's task to calculate Plaintiff's damages for her, nor must Defendant be left to guess as to the elements of Plaintiff's claimed damages. Plaintiff is obligated to comply with Rule 26, and compute it as it stands now, bearing in [] mind that a party is under a duty to supplement its response, as appropriate. Rule 26(e).").

Plaintiff's response may not be qualified by limiting words such as "including, but not limited to." As noted above, parties have a continuing duty to supplement and fully respond.

Interrogatory No. 9 asks that plaintiff "[s]tate in detail the factual bases for, and Identify any Documents that support the allegation contained in paragraph 14(h) of HKA's Complaint in this case that the Government required HKA to provide labor, services, equipment, and materials beyond the requirements of the contract without compensation." (Pl.'s Resp. to Def.'s Interrogs. 14.)

Plaintiff responded that defendant required it to provide the following without compensation: "security lighting and cameras, site trellis on rear of building, phone and terminations allowance, additional asphalt paving, redundancy and additional work required by the Imperial Irrigation District beyond point of service to point of connection, two walk through man gates, [and] anti climb fence fabric." (*Id*. at 15.) Plaintiff added that to further respond would require the preparation of a compilation, abstract, audit or summary that it is not required to make.

Defendant counters that it is entitled to know not just the categories of work beyond the requirements of the contract, but the underlying factual basis behind those claims. Defendant also asserts it is unclear whether or not the list is exhaustive – presumably because of plaintiff's objection that to further respond would require the

preparation of a compilation, abstract, audit or summary. It is assumed that plaintiff intends to offer factual evidence to establish that specific work was required to be performed which was beyond the contract terms. *See Info. Sys. & Networks v. United States*, _ Fed. Cl. _, 2008 WL 1991748 (May 6, 2008). Discovery addressed to disclosure of this evidence is appropriate and a response is required.

**Enlargement of time**

The parties seek modifications in the established deadlines. After consideration of the dates proposed by the parties, it is determined that the following modified new deadlines are established:

| Event | Current Deadline | New Deadline |
|---|---|---|
| designation of experts | 3/31/08 | 7/11/08 |
| close of non-expert discovery | 5/8/08 | 10/30/08 |
| expert reports | 5/26/08 | 11/7/08 |
| close of expert discovery including depositions | 7/14/08 | 12/19/08 |

Accordingly, it is **ORDERED** that defendant's Motion to Compel and for Enlargement of Time is **GRANTED** to the extent specified above and, otherwise, is **DENIED,** and the deadlines shall be modified as set forth above.

s/ James F. Merow
James F. Merow
Senior Judge