# In the United States Court of Federal Claims

No. 07-165 C
(Filed October 22, 2010)

```
**************************************
HERNANDEZ, KROONE AND            *
       ASSOCIATES, INC.,         *
                      Plaintiff, *
                                 *
             v.                  *
                                 *
                                 *
THE UNITED STATES,               *
                                 *
                      Defendant. *
**************************************
```

## ORDER

By leave of court, on March 8, 2010 [ECF No. 82], the government filed counterclaims under the special plea in fraud, 28 U.S.C. § 2514; the anti-fraud provision of the Contract Disputes Act, 41 U.S.C. § 604; and the False Claims Act, 31 U.S.C. §3729. Plaintiff's Answer to the Counterclaims [ECF No. 84] was filed March 29, 2010. With leave of court, plaintiff's Amended Answer to the Counterclaims was filed on May 21, 2010 [ECF No. 88]. The government's Motion to Strike [ECF No. 89], filed on June 3, 2010, seeks to eliminate certain affirmative defenses plead. Plaintiff's Opposition [ECF No. 91] was filed June 17, 2010; Defendant's Reply [ECF No. 96] was filed on July 6, 2010.

On June 3, 2010, defendant also filed its Third Motion to Compel [ECF No. 90], seeking to require plaintiff "to provide proper and complete responses to our third set of interrogatories and requests for production of documents, served April 5, 2010."

In its Response [ECF No. 93], plaintiff contends the discovery sought goes beyond the scope of the order allowing for the same, and also resists any further discovery obligations, insisting disclosure has been complete.

Although there has been ample time for discovery, the government asserts that plaintiff has failed to fully respond to discovery and in some instances deviated from prior responses, thus justifying continuing discovery relative to those revisions. No trial date has been set. There are serious allegations in this matter, including the recently-filed counterclaims. Both parties are entitled to rely on discovery responses. Absent extraordinary circumstances, amendment, revision, supplementation or other changes at trial will not be tolerated.

## A. Affirmative Defenses

By leave of court following a contested motion, Defendant's Amended Answer to Plaintiff's First Amended Complaint and Defendant's Counterclaims [ECF No. 82] was filed on March 8, 2010. The counterclaims, the possibility of which had been telegraphed as noted in the court's Order of December 31, 2008 [ECF No. 39 at 2], detail facts which, it is asserted, warrant invocation of the special plea in fraud, 28 U.S.C. § 2514; the anti-fraud provision of the Contract Disputes Act, 41 U.S.C. § 604; and the False Claims Act, 31 U.S.C. § 3729.

Plaintiff's original Answer to the Counterclaims [ECF No. 84] included twenty-one affirmative defenses. After discussions between counsel, plaintiff voluntarily eliminated several. Plaintiff's Amended Answer [ECF No. 88] advanced thirteen. Defendant's Motion to Strike [ECF No. 89] seeks to eliminate six more: waiver (first affirmative defense); unclean hands (third affirmative defense); laches (fourth affirmative defense); no actual injury (tenth affirmative defense); failure to mitigate damages (eleventh affirmative defense); and failure to plead fraud with particularity pursuant to RCFC 9(b) (thirteenth affirmative defense).

In its Response [ECF No. 92] plaintiff agreed to dismiss the tenth (no actual injury); eleventh (failure to mitigate damages); and the thirteenth (failure to plead fraud with particularity). Accordingly, defendant's Motion to Strike addresses the affirmative defenses of waiver, unclean hands and laches.

## Standard of Review

Rule 12(f) of the Rules of the Court of Federal Claims (RCFC) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" and may do so sua sponte or on a

motion by a party. "A motion to strike must be directed at a 'pleading.'" *Entergy Nuclear Fitzpatrick, LLC v. United States*, 93 Fed. Cl. 739, 742 (2010) (citing *Reunion, Inc. v. United States*, 90 Fed. Cl. 576, 580 (quoting RCFC 12(f)); *see also Tecom, Inc. v. United States*, 86 Fed. Cl. 437, 441 n.2 (2009). Plaintiff's Amended Answer to the Counterclaims is a "pleading." RCFC 7(a)(3).

Generally, "'[c]ourts view motions to strike with disfavor and rarely grant them.'" *Entergy Nuclear*, 93 Fed. Cl. at 742 (citing *Fisherman's Harvest, Inc. v. United States*, 74 Fed. Cl. 681, 690 (2006)). "'If sufficiency of the defense depends on disputed issues of fact or questions of law, a motion to strike should not be granted.'" *Id.* (citing *Sys. Fuels, Inc. v. United States*, 73 Fed. Cl. 206, 216 (2006)). "When considering a motion to strike a defense, the court must 'construe the pleadings liberally to give the [pleader] a full opportunity to support its claims at trial.'" *Id.* (citing *New York v. Almy Bros., Inc.*, 971 F. Supp. 69, 72 (N.D.N.Y. 1997)).

Defendant argues that the affirmative defenses of waiver, laches and unclean hands may not be applied against the government in the circumstances presented regardless of any facts plaintiff could present.

Plaintiff contends that defenses should not be stricken unless they could not succeed as a matter of law under any facts that could be developed. As discovery is continuing and facts and theories are "still being uncovered," (Pl.'s Opp., ECF No. 91 at 4-5), any determination as to legal sufficiency would be premature.

## 1.  Waiver

In its entirety, plaintiff's affirmative defense of waiver states:

62. Counter-Claimant has engaged in conduct and activities sufficient to constitute a waiver of any alleged claim for relief asserted in the Counter-Claim. Such conduct and activities include, but are not limited to, the Counter-Claimant's failure to provide the Counter-Defendant with a proper contractual scope of work, failing to administer the construction contract in good faith, failing to negotiate extra work claims in good faith, by deceiving the Counter-Defendant that the Counter-Claimant would compensate the Counter-Defendant for extra

work but then denying the extra work, by threatening the Counter-Defendant with financial ruin if Counter-Defendant did not do what the Government demanded, wherein Counter-Defendant was deprived of project information necessary for its claims, and by failure to implement required claims resolution procedures in good faith.

(Pl.'s Am. Answer, ECF No. 88 at 9.)

Defendant asserts that, as a matter of law, the government cannot waive fraud counterclaims, citing authorities that contracting officers lack authority to waive such matters.

While not disagreeing that a contracting officer lacks authority to waive the substantive counterclaims, plaintiff contends that the Department of Justice, under the direction of the United States Attorney, may waive False Claims Act matters. Indeed, authorities cited by both parties recognize this possibility. Plaintiff asserts that as discovery is ongoing, it would be inappropriate to strike that affirmative defense at this time. Plaintiff cites *United States ex rel. Monahan v. Robert Wood Johnson University Hospital at Hamilton*, No. 02-5702 (JAG), 2009 WL 4576097 (D. N.J. Dec. 1, 2009).

In that case, defendant responds, the court observed that "[v]iolations of the FCA . . . may only be waived by the Department of Justice, and the unauthorized statements of United States agents may not serve to waive the Government's claims." 2009 WL 4576097 at *7. Striking there was denied because facts could be developed in which "[i]t is possible that evidence procured through discovery will show that the Department of Justice, under the direction of the Attorney General, waived the Government's claims." *Id.* In contrast, nothing in the Amended Answer, the affirmative defenses, nor in the opposition to the motion to strike, suggest that the Attorney General waived the government's counterclaims in this case. Defendant cites *United States v. Cushman & Wakefield, Inc.*, 275 F. Supp. 2d 763, 771 (N.D. Tex. 2002) ("C & W has not pled that the DoJ waived these rights . . . . Consequently, as currently pled, the waiver and ratification defenses are unavailable to C & W."); *United States ex rel. Dye v. ATK Launch Systems, Inc.*, No. 1:06-CV-39 TS, 2008 WL 4642164, *3 (D. Utah Oct. 16, 2008) ("Defendant has not alleged that the Department of Justice waived these rights. Therefore, as currently pled, Defendant's waiver and ratification defenses fail as a matter of law and will be

stricken."); and *United States ex rel. Williams v. Renal Care Group, Inc.*, No. 4:05CV985-DJS, 2008 WL 5233028, *1 (E.D. Mo. Dec. 12, 2008).

Although the "'court should restrain from evaluating the merits of a defense where . . . the factual background for a case is largely undeveloped,'" *Moynahan*, 2009 WL 4576097 at *4, there has been ample discovery and no suggestion of facts such as would allow this defense. However, the factual matters alleged therein may be admissible at trial for other purposes, and if evidence is subsequently proffered prior to the completion of trial in this matter, this affirmative defense may be revisited.

### 2. Unclean hands

Plaintiff's Third Affirmative Defense, which reasserted the same conduct and activities alleged in the First Affirmative Defense, is:

> 64. Counter-Claimant has engaged in conduct and activities sufficient to bar it from bringing any claim for relief against Counter-Defendant under the doctrine of unclean hands. Such conduct and activities include, but are not limited to, the Counter-Claimant's failure to provide the Counter-Defendant with a proper contractual scope of work, failing to administer the construction contract in good faith, failing to negotiate extra work claims in good faith, by deceiving the Counter-Defendant that the Counter-Claimant would compensate the Counter-Defendant for extra work but then denying the extra work, by threatening the Counter-Defendant with financial ruin if Counter-Defendant did not do what the Government demanded, wherein Counter-Defendant was deprived of project information necessary for its claims, and by failure to implement required claims resolution procedures in good faith.

(Pl.'s Am. Answer, ECF No. 88 at 10.)

The government cites authorities for the proposition that the defense may never be asserted against the government or private parties in suits to vindicate the public interest. (Def.'s Mot. to Compel, ECF No. 89 at 6 (citing *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995) (citing *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 138 (1968) (exempting private parties who

vindicate the public interest from defense)); *SEC v. Gulf & Western Indus., Inc.*, 502 F. Supp. 343, 348 (D.D.C. 1980) (citing *United States v. Second Nat'l Bank*, 502 F.2d 535, 548 (5th Cir. 1974)); *United States v. W. Processing Co.*, 734 F. Supp. 930 (W.D. Wash. 1990) (holding unclean hands defense unavailable against the government); *United States v. Southern Motor Carriers Rate Conference*, 439 F. Supp. 29, 52 (N.D. Ga. 1977) (striking unclean hands defense).)

The government also contends that, as a matter of law, unclean hands is not a defense against these counterclaims which seek monetary damages against plaintiff. *Johns v. Rozet*, 141 F.R.D. 211, 220 (D.D.C. 1992) (striking affirmative defense of unclean hands because equitable defenses "have no application in this action brought under law"); *SFM Corp. v. Sundstrand Corp.*, 102 F.R.D. 555, 560 (N.D. Ill. 1984); *Natcontainer Corp. v. Cont'l Can Co.*, 362 F. Supp. 1094, 1098 (S.D.N.Y. 1973).

Plaintiff repeats that a defense may not be stricken unless its legal insufficiency is clearly apparent.  (Pl.'s Opp'n to Mot. to Strike, ECF No. 91 at 5 (citing *La. Sulphur Carriers, Inc. v. Gulf Resources & Chemical Corp.*, 53 F.R.D. 458 (D. Del. 1971).)  Plaintiff adds that none of the authorities cited by the government are False Claims Act cases and proffers that the evidence will show the following:

> [M]embers of the Army Corps and the Office of Contract Compliance threatened HKA with ruin should HKA fail to succumb to the will of the government.  HKA believes there is substantial evidence to prove that the current false claims allegations are part of a strategy to carry out that threat, particularly when one looks at the project history and the circumstances in which HKA brought its claims.  The Court should deny the Motion to Strike because the insufficiency of the defense is not clearly apparent as evidenced by the lack of case authority presented by Defendant.  Therefore, as pleadings are to be construed favorably to the pleader, HKA should be permitted to present this legally viable defense in further court proceedings.

(*Id.* at 6.)

In its Reply the government provides False Claims Act cases, specifically *United States v. Cushman & Wakefield, Inc.*, 275 F. Supp. 2d 763, 773-74 (N.D. Tex. 2002) and *United States v. Manhatten-Westchester Medical Services, P.C.*, No. 06-

Civ. 7905, 2008 WL 241079, *3-4 (S.D.N.Y. Jan. 28, 2008). In striking affirmative defenses of laches and unclean hands, the court in *Manhatten-Westchester Medical Services*, held:

> The affirmative defenses of laches and unclean hands are also unavailable against the Government. *See, e.g., United States v. Angell*, 292 F.3d 333, 338 (2d Cir. 2002) ("[L]aches is not available against the federal government when it undertakes to enforce a public right or protect the public interest."); *SEC v. Follick*, No. 00 Civ. 4385(KMW)(GWG), 2002 WL 31833868, at *8 (S.D.N.Y. Dec. 18, 2002) ("[T]he doctrine of unclean hands may not be invoked against a government agency which is attempting to enforce a congressional mandate in the public interest."); *see also Cushman & Wakefield*, 275 F. Supp.2d at 774.

2008 WL 241079 at *4.

Again, while the facts plaintiff allege concerning threats of financial ruin may be admissible for other purposes, cited authority precludes unclean hands as an affirmative defense against the government in the fraud counterclaims. Accordingly, the Third Affirmative Defense – unclean hands – is stricken.

### 3. Laches

Plaintiff's Fourth Affirmative Defense asserts:

> 65. Counter-Claimant has unreasonably and unjustifiably, and without good cause, and to the substantial prejudice of Counter-Defendant, delayed in pursuing its purported claim and in bringing this action, and Counter-Claimant's claim is therefore barred under the doctrine of laches. Counter-Claimants had Counter-Defendants Request for Equitable Adjustment in December of 2005 and failed to bring its counterclaim until the year 2010.

(Pl.'s Am. Answer, ECF No. 88 at 11.)

Citing authorities, the government posits that the equitable defense of laches may not be asserted against the United States when it acts in its sovereign capacity to enforce a public right, or to protect the public interest, both of which are implicated here. (Def.'s. Mot. to Strike Pl.'s Affirmative Defenses, ECF No. 89 at 7-9.) It is further noted that because the counterclaims were filed within applicable statutes of limitations, laches is not relevant. (*Id.*)

Plaintiff disagrees, citing instances where laches was asserted against the federal government, thus it cannot be said that a laches defense is legally insufficient under all circumstances. Striking would, therefore, be inappropriate.

In Reply, the government points out that HKA already lost on laches questions when this court granted the government's motion to amend to assert the counterclaims despite protests of delay and prejudice. As noted, in this regard, the court concluded "that defendant has not been dilatory with respect to seeking leave to file this pleading. Pleadings of this nature comprise a very serious matter which should receive careful advance consideration and preparation. Defendant gave considerable prior notice of its intentions in this regard and has met the pleadings standards required." (Order, Mar. 4, 2010, ECF No. 81 at 2.) The government also criticizes plaintiff's cited authorities which do not, as represented, support the proposition stated that laches may be asserted against the government.

As with the defense of unclean hands, laches in these circumstances is not viable. However, as with waiver and unclean hands previously plead, the factual matters asserted may be relevant on other grounds, which may be addressed at trial.

The remaining affirmative defenses neither addressed in defendant's Motion nor voluntarily dismissed by plaintiff, are: the Second (estoppel), Fifth (offset), Sixth (good faith and reasonableness), Seventh (caused by third parties), Eighth (consent), Ninth (statute of limitations) and Twelfth (knowledge of any falsity).

## B.  Motion to Compel

Defendant seeks to compel further responses to certain interrogatories and requests for production of documents served April 5, 2010. Incomplete responses, and in some instances, revisions of prior responses, require compulsion it is asserted.

In the alternative, as to certain matters for which discovery has not been forthcoming, defendant requests an adverse inference at trial.

Before addressing the merits of these disputes, the parties are reminded of their obligations under the court's December 31, 2008 Order and the Pretrial Order on Damages [ECF No. 39], designed to reduce the time and expense of this litigation. This streamlined audit and examination procedure will result in stipulations not necessarily as to recoverability, but as to admissability and accuracy of claims from a books and records perspective before trial so that only amounts/claims that counsel could not, in good faith, reach agreement, would require trial evidence. This audit procedure was to have, in some respects, replaced formal discovery into books and records matters. To the extent it was not previously explicit, that Order and the audit procedure provided therein, extend to the government's counterclaims and plaintiff's affirmative defenses. While the court did not impose deadlines, relying on counsels' representations that they had been proceeding informally along these lines, it is expected that by the time of the pretrial conference and, certainly, not later than at the commencement of trial which has not been scheduled, counsel will have stipulated to the amounts, admissability and accuracy of the claims advanced at all relevant times.

Nevertheless, it appears that at least some of the discovery disputes concern the amount of plaintiff's claim(s) and their constituent components, matters that should have been winnowed through the ordered informal audit procedure.

The court's March 4, 2010 Order [ECF No. 81] granted defendant's Motion for Leave to File Amended Answer to Assert Counterclaims [ECF No. 68], and Motion to Reopen Fact Discovery [ECF No. 71]. Additional discovery requested was two-fold:  incident to (1) plaintiff's then-recent provision of supplementary data and asserted failure to provide other materials; and (2) the counterclaims, in the event the court allowed the filing, a matter that was not a given.

For context in discussing the scope of discovery, plaintiff Herndanez, Kroone and Associates ("HKA" or plaintiff) submitted several certified CDA claims for damages under its fixed-price construction contract with the Army Corps of Engineers ("Army Corps"). Periodic payments made were based upon the percentage of contract work completed with final payment in May 2006. Generally, the contract required the construction of a 60-foot by 48-foot modular building for use as a border

patrol station on an approximately 2.5 acre site in Indio, California.  The scope of work included the preparation of the construction site, connection of underground utilities, paving of a parking lot, creation of a detention pond, installation of fencing gates and security cameras, and landscaping.  Plaintiff had 150 days to complete the work.  Subsequent contract modifications added 158 days to the contract term and a total of $116,305.60 to the original $875,768.00 contract amount.

In its certified claim dated December 13, 2005, plaintiff sought an additional $840,522.77 – nearly doubling the amount of the initial contract – plus a 119-day time extension for performing work allegedly outside the scope of work.  The contracting officer denied the claim in a final decision dated March 16, 2006.

Plaintiff's Complaint was filed on March 3, 2007 [ECF No. 1].  On June 4, 2007, plaintiff filed its First Amended Complaint [ECF No. 10] which asserts that additional work requested and other acts or omissions by the Army Corps "provoked subcontractor and supplier claims against HKA for which HKA is entitled to indemnity from [the] Army Corps or which claims HKA is entitled to pass-through to [the] Army Corps." (*Id*. ¶ 14(p).)  HKA further alleged that it "[h]as suffered, and is still suffering, claims and demands from subcontractors and suppliers, including the cost of processing and defending those claims and demands and passing them through to [the] Army Corps." (*Id*. at ¶ 15(c).)

The professed focus of the government's initial discovery efforts was plaintiff's claim before this court.  In that regard, plaintiff's January 23, 2008 interrogatory responses identified eight categories of claims: (1) permits and fees; (2) unilateral contract modification for lights and cameras; (3) Imperial Irrigation District requirements; (4) project management and contract interpretation; (5) prompt payment interest; (6) asphalt paving and restriping; (7) general and administrative (G&A) costs, profit, and bond costs; and (8) other additional costs related to a water line replacement and site flooding.  Included in the litigation claim is $70,980.01 in "Daily Job Costs" attributable to plaintiff's project superintendent, Mr. Hill.  According to the government, HKA's CDA claims included a much larger charge for Mr. Hill.  The government also contends that the $9,366.41 paid to subcontractor Palm Springs Paving included in the litigation claim was previously paid, and $464,779.08 in other subcontractor claims included in the certified CDA claims is not included in the litigation claim.

The divergence between claims now being litigated and those previously certified to the contracting officer is the focus of the recently-filed counterclaims and subsidiary discovery disputes. The government's Motion for Leave to File Amended Answer to Assert Counterclaims [ECF No. 68] asserted plaintiff's certified claims were knowingly or recklessly false, and the motion telegraphed a need for limited additional discovery:

> Accordingly, we propose to assert counterclaims based upon the abandoned claim items related to HKA's subcontractors and thereafter **to seek further discovery regarding the basis, if any, for HKA's having claimed those amounts in its various CDA claims submitted to the contracting officer**.

(Def.'s Mot. For Leave to File Am. Answer to Assert Countercl., ECF No. 68 at 10 (emphasis supplied).)

> [W]hile the Government requires limited additional discovery, the facts underlying our counterclaims are almost solely in the possession of HKA. Indeed, HKA should need no, or very little, additional discovery in order to prepare to address the new allegations at trial, as the vast majority of the facts relating to the our [sic] counterclaim allegations are in the possession of HKA's owners and employees. Indeed, the counterclaims likely will turn on the scienter of those witnesses, and such evidence already is in HKA's possession.

(*Id.* at 21.)

HKA also cited the possibility of additional discovery. (Pl.'s Opp'n to Def.'s Mot. For Leave to File Am. Answer to Assert Countercl., ECF No. 72 at 15.) "HKA will have to conduct further discovery to adequately defend itself, including written interrogatories and potential depositions of ACE project personnel, not to mention further expert work after expert reports have already been exchanged." (*Id.*)

Countering plaintiff's professed need for additional discovery should the court allow the filing of the Counterclaims, the government stated:

> [S]hould HKA prove that it is entitled to the sums contained in the CDA claims at issue – or that HKA reasonably claimed such sums – HKA will defeat our proposed counterclaims on the merits.  Because HKA already has had the opportunity to take discovery on its own claims and, in any event, should be able to justify the amounts contained in its CDA claims submitted to the contracting officer – quite apart from the fact that no Government employee can possess evidence regarding <u>HKA's scienter</u> – HKA's putative need for additional discovery upon our counterclaims is close to nil.

(Def.'s Reply, ECF No. 76 at 8-9 (emphasis in original).)  Nevertheless, the government indicated reciprocity would be extended to discovery related to the counterclaims.

> In any event, we will not oppose HKA undertaking the identical, limited discovery we would require. In that regard, the amount of additional discovery we seek regarding our counterclaims is minimal; we anticipate requiring only a single Rule 30(b)(6) deposition, preceded by no more than 10 interrogatories and requests for production of documents, assuming HKA promptly discloses all of its discoverable information and documents. To be clear, if both motions are granted, we seek a total of two additional Rule 30(b)(6) depositions.

(*Id*. at 9 n.4)

Shortly after the December 22, 2009 filing of the government's Motion for Leave to File Amended Answer to Assert Counterclaims [ECF No. 68], on January 8, 2010, the government filed a separate Motion to Reopen Fact Discovery [ECF No. 71].  It is contended that in the deposition of plaintiff's expert, Mr. Craig Sorensen, the government became aware that the electronic project scheduling data previously produced was created by the expert, not in the original format of HKA.  The government seeks HKA's electronic scheduling data (Microsoft Project) presumably in all versions, including particularly in the form and version as provided by HKA to Mr. Sorensen.  The government also requested an extension of time for provision of rebuttal expert reports and expert deposition, which plaintiff does not oppose.  A CD-ROM of 15 electronic files was provided by plaintiff to the government counsel on January 7, 2010.  To inquire into this newly-produced evidence relating to the

amounts being claimed in this litigation, the government requests a reopening of its Rule 30(b)(6) deposition of HKA which the government represents would take no longer than a single business day. *Id*. at 4.

Plaintiff's Opposition to Defendant's Motion for Leave to File Amended Answer to Assert Counterclaims [ECF No. 72] asserted prejudice in the addition of a Counterclaim after more than two years of litigation. Plaintiff complained that it is a small business and cannot afford additional delay before going to trial and cannot afford to re-open discovery, predicting that it would have to conduct discovery to respond to and defend against the false claims, and to conduct research in this subject.

Plaintiff's Response to United States' Motion to Reopen Fact Discovery [ECF No. 73] asserts the government has overreacted to iterations of electronic construction schedules. According to plaintiff, the Army Corps was given two hard copy format project schedules in 2005. In a footnote, plaintiff remarks that "[the Army Corps] was given the expert's schedules based on the HKA schedules. HKA **will also** provide [the Army Corps] with the underlying HKA schedules, which are included in the electronic files already provided." (*Id*. at 1 n.1 (emphasis supplied).) Plaintiff represents that "[t]hose schedules simply list all the relevant construction events which occurred on the construction project, showing the start date and end date for each task which is relevant for the purpose of schedule (sic), along with the relationship of those tasks." (*Id*. at 5, 6.) As such, they are best suited for discussion in expert depositions which had not then been completed.[1/] However, if the court finds additional discovery in this regard is appropriate, then plaintiff agrees to reopen the deposition of HKA strictly to discuss purely technical issues regarding how the electronic files were compiled. Acknowledging that the government's Motion to Reopen Fact Discovery and the Motion for Leave to File Counterclaim, are "completely separate," plaintiff complained that the government was using the format of the electronic schedules to bolster its request to file its counterclaims.

In its Reply to the plaintiff's Opposition to both the motion to compel and the motion to strike, the government reiterated its request for a brief (no more than one day) RCFC 30(b)(6) deposition and summarized conversations between counsel

---

[1/] Plaintiff also notes that the government did not establish that the electronic format of the schedules were previously requested. (*Id*. at 4 n.6)

concerning the government's request for electronic data in its original Microsoft format and listed other documents the government recently determined had not been provided, particularly, certain exhibits from arbitration proceedings between plaintiff and General Modular, one of its subcontractors.

The Order of March 4, 2010, granted both motions of the government and noted that "[a]t most, some additional discovery will be needed." (Order, ECF No. 81 at 2.) As required by that order, the parties filed a Joint Status Report on March 23, 2010 [ECF No. 83] requesting a discovery cut-off of July 30, 2010 and trial on November 8-19, 2010 in Los Angeles, California. No specifics as to the scope of that discovery was reported or included in the court's order of April 8, 2010 approving the same [ECF No. 85]. A further Order, ECF No. 98, approved the parties' consent to extend expert discovery until September 30, 2010 (a deadline that has been further extended) to investigate what defendant described as changing theories of plaintiff's expert, Mr. Craig Sorensen. The parties recently stipulated [ECF No. 100] to allow the completion of that expert discovery until thirty days after the court's resolution of Mr. Sorensen's deposition controversy.

In addition to the foregoing, the government's motion to compel addresses specific interrogatories.

**1. Interrogatory No. 28**[2/] requested plaintiff to "[i]dentify all subcontractors and suppliers referenced in paragraphs 14(p) and 15(c) of HKA's First Amended Complaint, and the associated amounts HKA seeks 'to pass through' to the Corps." (Def.'s Third Mot. to Compel, ECF No. 90, Ex. A at 4.)

Plaintiff's Response was:

The allegations of HKA's First Amended Complaint, ¶14(p) and 15(c)[3/] were intended to preserve any and all rights that HKA's

---

[2/] Interrogatory numbers presumably commence after the initial 25 maximum allowed absent court order. RCFC 33(a)(1).

[3/] Paragraph 14 of plaintiff's First Amended Complaint [ECF No. 10] asserts, on information and belief, that the Army Corps breached the subject contract in numerous ways (itemized as "a" through (continued...)

subcontractors and suppliers would and could have in pursuing claims against the Corps.  One such subcontractor would include Heisler.

(*Id.,* Exh. B at 19.)

The government objects to plaintiff's use of the of the limiting word "include" in the interrogatory response, a qualification previously rejected by the court. *Hernandez, Kroone & Assocs. v. United States*, No. 07-165, 2008 WL 4725433 (Fed. Cl. June 16, 2008).  The government also complains that this response was contrary to plaintiff's previous representation that it was not pursuing any claim related to subcontractor Heisler.  *Hernandez, Kroone and Associates, Inc. v. United States*, 85 Fed. Cl. 662, 665 (2009) ("HKA has abandoned certain claims and admits such. . . . The court will hold HKA to that admission.").

Plaintiff responds that this data was previously, and repeatedly provided as early as the Rule 26 Initial Disclosure in February of 2007, and attaches a copy of plaintiff's Initial Disclosure Statement which identifies 159 individuals, their affiliation (contractor, subcontractor, government agency etc.), address and telephone number.[4/]  (Pl.'s Opp.'n to Mot. to Compel Further Resps,, ECF No. 93 Exh. A.) Accordingly, plaintiff concludes, its discovery obligation has been fulfilled.

HKA is correct that if all documents have been produced, its discovery requirements are fulfilled, subject to the continuing obligation on the part of both

---

(...continued)

"o") which, it is concluded in subsection (p): "provoked subcontractor and supplier claims against HKA for which HKA is entitled to indemnity from Army Corps for which HKA is entitled to indemnity from Army Corps or which claims HKA is entitled to pass-through to Army Corps." Paragraph 15 avers that because of the afore-mentioned breaches, plaintiff incurred expenses and "[h]as suffered, and is still suffering, claims and demands from subcontractors and suppliers, including the cost of processing and defending those claims and demands and passing them through to Army Corps; All to HKA's damage in an amount not yet fully ascertained (but approximately $375,000), and when ascertained this pleading will be amended to state the correct amount, plus interest thereon as provided in the Contract Disputes Act, plus any prompt payment penalties as provided by the contract and relevant statutes."

[4/] Plaintiff's observation that this Interrogatory is beyond the scope of the court's March 4, 2010 Order is not correct.  It is presumed this Interrogatory is included in the ten requested if the court allowed the filing of the government's counterclaims.

parties to supplement without prompting under RCFC 26(e)(2), an obligation that is not neutralized by the use of the limiting word "including." This obligation to supplement and/or correct continues to, and through trial.

In reply, defendant states that this interrogatory seeks information about plaintiff's certified claims and Amended Complaint for subcontractor costs and is relevant to the recently filed counterclaims. The government's False Claims Act and related fraud claims direct attention to the claims submitted to the Contracting Officer. The fraud claims are not directed at the Amended Complaint; however, the interrogatory refers to the allegations of the Amended Complaint. Except in conclusory fashion, defendant has not suggested or established how this questioning of plaintiff's cognizance of real or potential subcontractor claims on or about June 4, 2007, the date of the filing of the Amended Complaint, may lead to otherwise discoverable evidence as to the certified claims to the contracting officer in December of 2005 and May of 2006. *See Daewoo Eng'g & Constr. Co. v. United States*, 557 F.3d 1332, 1335-41 (Fed. Cir. 2009), *cert. denied,* 130 S. Ct. 490 (U.S. 2009). Given the broad scope of discovery, the government is entitled to limited inquiry, mindful of the limits of attorney/client and work product privileges. Whether any results might be relevant or admissible are questions reserved for trial.

**2.  Interrogatory No. 29** required plaintiff to "[i]dentify the amount of any damages sought in HKA's Fifth Claim for Relief . . . that are not sought by way of HKA's first three Claims for Relief in HKAs First Amended Complaint." (*Id*., Exh. A at 4.)

Plaintiff objected, classifying this request as to what is not included as damages in alternate counts as calling for a legal conclusion outside the parameters of RCFC 33(a)(2). Plaintiff also contends that its expert witness report contains a detailed analysis of its damages claims; therefore, required information has been provided and plaintiff has no obligation to categorize its damages by Claims for Relief.[5]

---

[5] The First Claim for Relief of Plaintiff's Amended Complaint [ECF No. 10], filed June 4, 2007, is for breach of contract; the Second Claim for Relief is for breach of contract through nondisclosure of material facts; the Third Claim for Relief is for breach of implied warranty of correctness of plans and specifications; and the Fifth Claim for Relief is for breach of the covenant of good faith and fair dealing. The Fourth Claim for Relief, violation of prompt payment statutes, was previously dismissed.

Plaintiff declined to respond and interposed an objection that defendant asserts the court previously rejected. *See* 2008 WL 4725433 (*quoting Oliver v. City of Orlando*, 2007 WL 3232227, *3 (M.D. Fla. Oct.31, 2007)).

Defendant insists plaintiff must respond to this interrogatory, which seeks to discover whether there is any quantum of alleged damages associated with – or whether there are any independent factual bases supporting – plaintiff's Fifth Claim for Relief that are not subsumed by one of the first three claims for relief.

The scope of discovery, while broad, is constrained to matters reasonably calculated to lead to admissible evidence. RCFC 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . [which] appears reasonably calculated to lead to the discovery of admissible evidence."). There being no showing of how this request is reasonably calculated to lead to discoverable evidence concerning the government's counterclaims, and given the extensive fact discovery concerning plaintiff's case, the motion to compel as to Interrogatory No. 29 is denied.

**3. Interrogatory No. 30** asked:

Who calculated the amounts in HKA's December 13, 2005, December 15, 2005, and December 23, 2005 claims related to Heisler, Alcorn Fence Co. and General Modular Corp.?

(*Id.*)

Plaintiff's Response was:

HKA calculated the amounts, however HKA made it clear to the Corps. That those amounts stated were based upon anticipated expenses and were good faith estimates based on HKA's knowledge and belief as of that time. HKA included such claims in order to preserve other claims that it could possibly receive from its subcontractors and suppliers.

(*Id.*, Exh. B at 20.)

-17-

The government contends, and the court agrees that given the government's burdens relative to its counterclaims, plaintiff must identify the individual or individuals that calculated the amounts in the identified CDA claims related to Heisler, Alcorn Fence Co., and General Modular Corp. *See Daewoo*, 557 F.3d at 1338-39 (discussing testimony of individuals who prepared and certified the claim). The response that "HKA calculated the amounts" is self evident and not responsive. The government's motion to compel as to Interrogatory No. 30 is granted.

**4.  Interrogatory No. 31** asks:

> For each of HKA's subcontractors (on the Project), identify any additional amount of compensation sought by the subcontractor (from HKA) for work beyond the scope of the associated subcontract, whether or not HKA now seeks damages for such amounts from the Government.

(*Id.*, Exh. A at 4.)

Plaintiff's Response was:

> Objection.  This Interrogatory is vague and ambiguous and thus requires the responding party to speculate as to what the propounding party intends.  This Interrogatory is also overbroad and burdensome, and it seeks information which is currently available to the propounding party.   Without waiving said objections, to the extent that the propounding party is seeking information regarding HKA's claims for damages based upon the Corps' failure to following [sic] contract terms, HKA has previously addressed this Interrogatory with prior discovery responses, as well as its expert disclosure statement.  As such, the responding party incorporates HKA's Responses to First Set of Interrogatories, HKA's Supplemental Responses to First Set of Interrogatories, HKA's Second Supplemental Responses to First Set of Interrogatories, HKA's Third Supplemental Responses to First Set of Interrogatories, HKA's Responses to Second [S]et of Interrogatories, HKA's Supplemental Responses to Second Set of Interrogatories, HKA's Second Supplemental Responses to Second Set of Interrogatories, and HKA's Expert Reports.  Notwithstanding these

objections, and without waiving said objections, HKA refers to and
incorporates its response to Interrogatory number 26.

(*Id.*, Exh. B at 20-21.)

The government rightly points out that discovery was previously precluded on
matters that were no longer being pursued by plaintiff in this litigation. What is
targeted is not the scope of additional work; rather whether any of HKA's
subcontractors sought additional compensation from HKA for work beyond the scope
of that subcontractor's agreement with HKA, regardless of whether that pass-through
claim is now being asserted.  The filing of the Counterclaims renders relevant the
matters in the CDA claims.  Again, it is not beyond reason that the post-CDA claims
of a subcontractor would lend credence to HKA's concerns regardless of whether
subcontractor claims are included in plaintiff's affirmative claims in this litigation.
Whether the absence of post-CDA claims of any subcontractor would be relevant may
be a different matter.  Regardless, the government is entitled to limited discovery,
again subject to limitations imposed by the attorney/client and work product
privilege. Accordingly, the government's motion to compel a further response to
Interrogatory No. 31 is granted.

Also subject to the government's Motion to Compel are Eight Requests for
Production of Documents – all but one are qualified with "not previously produced."

**Request for Production No. 1**
All documents, not previously produced, upon which HKA has relied,
or will rely, to answer the above interrogatories.

**Request for Production No. 2**
All documents, not previously produced, related to any claims submitted
by an HKA subcontractor to HKA for additional compensation in the
performance of work that is the subject of the contract at issue in this
case.

**Request for Production No. 3**
All correspondence, not previously produced, between HKA and
Heisler, Alcorn Fence Co., or General Modular Corp. related to HKA's
claims at issue in this case.

**Request for Production No. 4**
All correspondence, not previously produced, between HKA and Heisler, Alcorn Fence Co., or General Modular Corp. regarding claims that HKA is **not** pursuing in this case.

**Request for Production No. 5**
All documents, not previously produced, upon which HKA has relied, or will rely, to deny any of the allegations contained in the Government's counterclaims(s), filed March 8, 2010.

**Request for Production No. 6**
All exhibits, not previously produced, related to HKA's arbitration proceedings against General Modular Corp., including Exhibits H-17, H-18, and H-19.

**Request for Production No. 7**
Any transcript(s) of any hearing related to HKA's arbitration proceedings against General Modular Corp.

**Request for Production No. 8**
All subcontracts not previously produced.

(*Id.* Exh. A at 5.)

Plaintiff's response to these Requests for Production was the same: "Objection. This Request for Production is burdensome and constitutes harassment inasmuch as HKA has previously provided said information." (*Id.,* Exh. B at 22-24.)

If all documents have been previously produced, then except for the continuing obligation to supplement, the court will not order the production of non-existent documents or require needless replication. However, to the extent there are additional documents not previously produced but responsive to these Requests, they must be produced. A contractor may be liable under Section 604 of the CDA if unable to support any part of a claim due to misrepresentation or fraud. Although the times the certified claims were submitted to the contracting officer are particularly relevant, subsequent events, including the arbitration proceedings, may also illuminate the relevant contract performance. The Requests appear reasonably calculated to lead to

admissible evidence. The government is entitled to the Microsoft Project in its original HKA format and in the format as it was provided to plaintiff's expert Mr. Craig Sorensen. The government's request for adverse inferences is reserved for trial.

Accordingly, it is hereby **ORDERED**:

(1)  At plaintiff's agreement, the Affirmative Defenses of no actual injury (Tenth Affirmative Defense), failure to mitigate damages (Eleventh Affirmative Defense) and failure to plead fraud with particularity (Thirteenth Affirmative Defense), in plaintiff's Amended Answer [ECF No. 88] are **stricken.**

(2)  Defendant's Motion to Strike [ECF No. 89] is **GRANTED** in part and **DENIED** in part as provided herein.  The affirmative defenses of waiver (First Affirmative Defense); unclean hands (Second Affirmative Defense) and laches (Third Affirmative Defense) are **stricken**.

(3) The government's Third Motion to Compel [ECF No. 90], is **GRANTED** to the extent provided for herein, and is otherwise **DENIED**.

s/ James F. Merow
James F. Merow
Senior Judge